Hall, Judge.
From the facts stated in this case, particularly those disclosed by the. testimony of Gray Little, I think the Jury were at liberty to find a verdict for the Plaintiffs.
When-, one of the Defendants, wished to borrow money of the witness in Tarborough, rather than draw for it on the house of “, Sweeting & Sterret,” to which the cotton had been cons'gned, in Baltimore, it no doubt was because he considered the money would be more useful to him in Baltimore than it would be in Tarbo-rough. By electing to keep it there, he exercised an act of ownership over it; and by doing so he made it his own, and this he had a right to do, for it was stipulated between the Plaintiffs and the Defendants that the proceeds of the cotton, when sold, should be credited^ the debt due from the Plaintiffs to the Defendants. Amd if at that time the amount of sales had been known, and the Plaintiffs and the Defendants had come to a settlement of their accounts, the Plaintiffs would have had a credit (as they ought to have had) for the amount of those sales; and if the house of “ Sweeting & Sterret” were solvent at that time, but failed afterwards, the Defendants must have borne the loss.
But it does not appear whether the Jui’y, in finding a verdict for the Plaintiffs, took this view of the case — -or *149 whether, laying tiie testimony of Litlle out of the qucstion, they were influenced, in finding their verdict, by the charge of the Court. If Iheir verdict was found upon the testimony of Lillie, 1 think it ought not to be disturbed. ¡f laying the testimony of Lillie out of the case, it was so found in consequence of the charge of the Court, it will be proper next to consider, Whether in that case it ought to be set aside. The Court in its charge to the Jury has said, “ that the Defendants were bound to use that care and diligence which a prudent and discreet man would use relative to his affairs. That the circumstance of the Defendants’ losing Iheir cotton was not the rule to govern them, hut they must enquire whether he acted as a prudent and discreet man ‘ in the business.” Viewing the case as I have before done, connected with the testimony of Litlle, no want of diligence is imputable to the Defendants. They in apt time, elected to consider the money iheir own in Baltimore, and chose to leave it there, rather than have it at home. But laying that testimony aside, the case assumes a different aspect.
It does not otherwise appear, but that the house of “ Sweeting k Sterret” merited their confidence when the Defendants made a consignment of the cotton to it. That they thought so, is proved from the fact that they made a consignment to it of their own produce, and some of the neighbouring merchants did the same thing. The Plainti^were not ignorant of the fact, that such con-sigument was made of their cotton, for when they applied to the Defendants for intelligence respecting it, they were informed that no account of sales had come to hand. It does not appear that in this the Defendants were incorrect. It seems that the Defendants had made other consignments before that time to the same house — that they had drawn bills upon it which had been accepted and paid — from the spring 1820 until the winter 1820-1821, there was no distrust of the solvency of the house — the first intelligence of it, was also intelligence that diligence *150 y/as useless — what time the house failed does not appeal, so ^iat ^ ('oes n°t appear whether any diligence would have prevented a loss. The Plaintiffs themselves, if they had apprehended danger, might have made enquiry, for it must be kept in view that the Defendants were mere mandatories, they acted without a reward.
Under this latter view of the case, I think the principle of decision will not steer clear of the circumstance that the property of the Defendants shared the same fate with that of the Plaintiffs j although it will not make it the standard of decision, nor will it altogether overlook the circumstance that others of the same neighborhood with the Defeftdants were sufferers in the same way. These and other circumstances which make up the case, make it necessary to enquire whether the Defendants were guilty either of fraud or gross negligence, and if referring the Jury to that standard in making a decision, they had found a verdict for the Plaintiffs, I should willingly acquiesce, even without the aid of Gray Little’s testimony. There is a material difference between a bailee who acts for a reward; and one who acts gratuitously. In. the case of Shiells v. Blackburne, (1 H. Bl. 158,) it is laid down by the Court, and declared by Ld. Loughborough, that he agrees with Sir Wm. Jones in that respect, that where a bailee undertakes to perform a gratuitous act, from which the bailor alone is to receive benefit, there the bailee is only liable for gn^| negligence, but it is otherwise where the profession of the bailee implies skill, for in that case a want of skill is imputable as gross neglect. — (See also Cow. Rep. 480, to the same effect.) Sir Wm. Jones, in his law of bail-ments, (page 15,) says, that if the bailor only receives benefit, the bailee is only liable for gross neglect.-— Therefore, if the Jury had been instructed that the Defendants were only liable for fraud or gross neglect, whether they had found a verdict for the Plaintiffs on the testimony of Little, or under that charge of the Court ; *151 Í should be of opinion (be verdict ought! to stand, bat as the Jury have been referred to another rule to go by— one that 3 think governs ¡.be case of a mandatory who acts for a commission, or a reward ; i think a new tr5al should be granted, and for that reason only.
JIejtdkrsoN, Judge, concurred with Ham,.