## RAYMOND CLOTT v. GREYHOUND LINES, INC.

### No. 7010DC495

### (Filed 18 November 1970)

**1. Carriers § 16— baggage in control of bus passenger — nonliability of carrier**

A bus passenger has the right to carry his baggage on the bus with him and under his control; if he does so, the baggage is in the custody of the passenger and the carrier has no responsibility with respect thereto.

**2. Bailment § 3— burden of proving bailment**

Plaintiff has the burden of proving the contract of bailment sued on, whether express or implied.

**3. Bailment § 1— delivery and acceptance of possession**

To create a bailment, there must be a delivery to and acceptance of possession of the article by the bailee.

**4. Bailment § 3— gratuitous bailment — liability of bailee — gross negligence**

Where the bailment is gratuitous, the bailee is liable only for gross negligence.

**5. Bailment § 3; Carriers § 16— loss of bus passenger's baggage — action against carrier — burden of proof**

In order for plaintiff bus passenger to make out a *prima facie* case for the recovery from defendant bus company for the loss of a leather bag on the theory of bailment, plaintiff would have to show that the bag was delivered, actually or constructively, to defendant in good condition, that defendant accepted it, actually or constructively, that thereafter the defendant had either actual or constructive possession and control of it, and that defendant failed to return it to plaintiff or returned it in a damaged condition.

**6. Bailment § 3; Carriers § 16— loss of bus passenger's baggage — insufficiency of evidence of bailment and negligence**

In this action by plaintiff bus passenger to recover from defendant bus company on the theory of bailment for the loss of a leather bag and its contents which remained on the bus after plaintiff was left behind when defendant's bus made a stop, plaintiff's evidence was insufficient to show that the bag and its contents, which plaintiff had been carrying with him on the bus, were ever in the exclusive possession and custody of defendant or that defendant was negligent in any manner, and defendant's motion for a directed verdict was properly allowed.

**7. Appeal and Error § 45— abandonment of assignment of error**

Assignment of error not brought forward and argued in appellant's brief is deemed abandoned.

APPEAL by plaintiff from *Ransdell, District Judge,* 31 March 1970 Session, WAKE County District Court.

Plaintiff, a merchant seaman residing in Florida and New York, instituted this action to recover from Greyhound Lines, Inc., damages for the loss or theft of his leather grip and its contents while the grip was allegedly in defendant's custody. Plaintiff alleges that on 1 December 1966 he bought a ticket from defendant for his transportation from Bushnell, Florida, to New York, New York, via Jacksonville, Florida. He was not able to check his baggage at Jacksonville because of lack of time. When the bus reached Columbia, South Carolina, plaintiff left the bus for breakfast, understanding that he would have 30 minutes because of necessary repairs, he having slept through the regular waiting time when all other passengers disembarked. However, a very few minutes later the bus left without him. He advised the dispatcher that he had been left and that his hat and leather grip containing a large sum of cash and other valuable items were on the bus. The dispatcher wired the Raleigh station and instructed the "Greyhound officials there" to have the leather grip and hat removed from the bus and kept for plaintiff. Plaintiff further alleges that "upon the arrival of the bus in Raleigh, the driver, A. H. Howell, removed the hat and leather grip from the bus, then and there assuming custody and control of said items including the contents of the leather grip, and delivered them in good condition to the Greyhound Transportation Supervisor in the Raleigh bus station for safekeeping."

Plaintiff further alleges that upon his arrival in Raleigh later the same day, he demanded that defendant deliver to him the hat and leather grip; that the hat was delivered to him but defendant refused and neglected to deliver to him the leather grip until May of 1967 at which time it was located in Chamblee, Georgia, and returned to plaintiff in a damaged condition and minus its contents.

Defendant answered denying all the material allegations of the complaint and setting up as a bar to recovery plaintiff's contributory negligence and national baggage tariff A-500D.

At the close of plaintiff's evidence, defendant moved for a directed verdict under Rule 50. The motion was allowed and plaintiff appealed.

*Boyce, Mitchell, Burns & Smith by Robert E. Smith for plaintiff appellant.*

*Teague, Johnson, Patterson, Dilthey & Clay by I. Edward Johnson for defendant appellee.*

MORRIS, Judge.

Plaintiff's evidence, in addition to his own testimony, consisted of the adverse examinations of three employees of defendant: A. H. Howell, driver of the bus; Roy Wells, Superintendent of the Raleigh Division of Greyhound; and Walter J. Rackley, a part-time dispatcher relief for Greyhound who was on duty on the date in question. Plaintiff testified that he bought a ticket in Bushnell, Florida, with the final destination to be New York, New York, via Greyhound bus. He changed busses in Jacksonville, Florida, and carried the grip with him on the bus when he boarded in Jacksonville. He testified that he was not allowed to check the bag at that time because his bus was scheduled to depart in five minutes, and all baggage had to be checked at least 20 minutes before the scheduled departure time.

The bag had in it an envelope containing $2,209 in cash; a Leica camera; Rolex watch; Hamilton watch; three bottles of perfume—Arpege, Alma and Joy; two electric razors; and his seaman's papers. Plaintiff testified that he got on the last seat "on top in the scenic cruiser, and it had a receding wall about this wide here between the seat and the motor wall, and I got on my knees and dropped the bag behind there; all the way." When the bus arrived in Columbia, South Carolina, an announcement of a stopover was made, but plaintiff paid no attention because he was "half asleep." The other passengers got off for breakfast. Plaintiff testified that later another announcement was made that the bus would be delayed for about 20 minutes and if anyone wanted coffee to go get it. Plaintiff got off the bus and went in to get coffee and doughnuts, and while he was walking out with the doughnuts, he saw the bus pulling out. He was the only passenger who had left the bus at the second announcement. Plaintiff then went to the dispatcher and "I told him that the bag was there and my hat and I had my personal things in that, and some cash in the bag also. I described the bag to him. . . . I told him where the bag was located on the bus." Plaintiff further testified that when he arrived in Raleigh later the same day, he

went to the dispatcher, whose name he thought was Rackley, and asked for his bag. The dispatcher gave him his hat but said, as to the bag, "My God, I gave it away. He said, I must have made a mistake." Plaintiff continued his trip to New York and in May 1967 received a letter from Greyhound advising that they had located the bag in Chamblee, Georgia. When the bag was returned to plaintiff, "the lock was gone off and the small lock there was jimmied, which it still is, and the entire lining was torn out of the bag, which is still there. I cemented it back, but it was all torn out. It had been ransacked."

Mr. Howell, the driver, testified that when he arrived in Raleigh he was notified that a passenger had been left in Columbia and was asked to get his baggage and bring it to the dispatcher's office. "Close as I can recall on that, it was a small—well, one of these small bags and he told me it was at the back of the bus on the rack. I went out there while they were servicing the bus and got it off and brought it to him. I gave the bag directly to Mr. Rackley. I did not notice anything unusual about the bag when I took it off of the bus. He told me that it was on the rack. Now he didn't say right rear. He said in the back. Now if I remember correctly it was on the right rear. Mr. Rackley did not tell me anything about the contents of the bag. I did not examine the bag or open it to see if it was the bag in question; that's not my job. I did not notice whether or not the bag was locked. I don't recall whether the bag had a leather grip on it, or double leather grips."

Mr. Wells, the Superintendent, testified that he was not in Raleigh that day but recalled that Mr. Rackley later told him he had received a message from Columbia concerning lost baggage containing valuables; that he contacted the driver immediately upon the arrival of the bus in Raleigh and asked him to remove the bag from the bus and that the driver did deliver the bag to Mr. Rackley, and it was placed in the dispatcher's office. Mr. Rackley had also told this witness that he was unable to locate the bag when plaintiff arrived. The dispatcher's office is small with one exit door opening to the outside of the terminal onto the loading platform.

Mr. Rackley testified that he remembered receiving a message from Columbia. "To the best of my knowledge, the message said that there was a bag and a hat behind the rear seat of a scenic cruiser type bus which is the very rear seat

on the bus. As to whether or not the message stated that there were any valuables in the bag, I don't recollect it making any statement as to any contents of the bag. It was just a bag and a hat." Mr. Rackley further testified as follows:

"If I remember correctly, I went to the bus with the driver, but there was a lot of these cases that comes up and if I remember on this particular case I did. I went to the back of the bus with the driver. At the time I got to the back of the bus I did not find the bag behind the seat. We found a hat and no bag, there was a bag that was not behind it but there was a bag in the back of the bus and there was a passenger back there and we asked him about this bag and he said it was his bag, so then we took the hat and took it back into the dispatcher's office. As to whether neither I nor the driver took a bag off the bus, to the best of my knowledge I don't remember taking a bag because this passenger that was on the bus claimed that the only bag there was his. As to whether I examined the bag that this particular passenger had or remember looking at it, it was just a bag but we didn't examine it when the passenger said it was his we didn't do anything with it. If I remember correctly the bag that I refer to was in the back of the bus on the seat. I am not sure that is the correct place it was at but there was no bag behind the seat as I can remember."

When plaintiff arrived, Mr. Rackley delivered his hat and told him about the bag and offered to teletype the dispatcher in Richmond. Bus company personnel other than the dispatchers and drivers go in and out of the dispatcher's office.

[1] A bus passenger has the right to carry his baggage on the bus with him and under his control. If he does so, the baggage is in the custody of the passenger, and the carrier has no responsibility with respect thereto. *Neece v. Greyhound Lines,* 246 N.C. 547, 99 S.E. 2d 756 (1957). Plaintiff concedes that if he is entitled to recover, it must be under a bailment theory. Plaintiff also concedes that if a bailment exists, it is a gratuitous bailment. When plaintiff boarded the bus at Jacksonville, Florida, he carried his bag on board with him. No duty on the part of defendant arose until defendant became the bailee of plaintiff, if, in fact, a bailment arose.

[2, 3] Plaintiff had the burden of proof, by competent evidence, to show a contract of bailment, whether express or im-

plied. *Troxler v. Bevill*, 215 N.C. 640, 3 S.E. 2d 8 (1939). To create a bailment, there must be a delivery to and acceptance of possession of the article by the bailee. *Freeman v. Service Co.*, 226 N.C. 736, 40 S.E. 2d 365 (1946). "There must be such a full transfer, actual or constructive, of the property to the bailee as to exclude the possession of the owner and all other persons and give the bailee for the time being the sole custody and control thereof." *Wells v. West*, 212 N.C. 656, 194 S.E. 313 (1937).

[4] Where the bailment is gratuitous, the bailee is liable only for gross negligence. *Stanton v. Bell*, 9 N.C. 145 (1822); *Kindley v. Railroad*, 151 N.C. 207, 65 S.E. 897 (1909). Our Supreme Court has defined gross negligence as "something less than willful and wanton conduct." *Smith v. Stepp*, 257 N.C. 422, 125 S.E. 2d 903 (1962).

[5] Plaintiff contends that his evidence is sufficient to make out a *prima facie* case of negligence sufficient to have been submitted to the jury. In this case, in order to make out a *prima facie* case, plaintiff would have to show that the bag was delivered, actually or constructively, to defendant in good condition; that defendant accepted it, actually or constructively; that thereafter the defendant had either actual or constructive possession and control of it; and that defendant failed to return it to plaintiff or returned it in a damaged condition. See *Kindley v. Railroad, supra; Insurance Co. v. Motors*, 240 N.C. 183, 81 S.E. 2d 416 (1954); *Mills, Inc. v. Terminal, Inc.*, 273 N.C. 519, 160 S.E. 2d 735 (1968).

The plaintiff's evidence, taken in the light most favorable to him, tends to show that he was left at Columbia, that his bag remained on the bus; that the dispatcher at Columbia was advised of the situation and that the bag contained valuables; that the dispatcher in Columbia teletyped the dispatcher in Raleigh describing the bag, advising that it contained valuables, describing it and its location in the bus, and directing that it be removed from the bus when the bus arrived in Raleigh; that the Raleigh dispatcher received the message; that when the bus arrived in Raleigh the dispatcher and the driver boarded the bus and removed a bag and a hat from the bus; that the bag removed was not found where plaintiff had said he left it; that the bag removed was taken to the dispatcher's office and put on the shelf; that when plaintiff arrived in Raleigh later the same day he was given his hat but the bag was not

Clott v. Greyhound Lines

there; that he was told by the dispatcher that a mistake had been made and the bag given to someone else; that the dispatcher's office was small with one exit door opening to the outside of the terminal onto the loading platform; that bus company personnel other than drivers and the dispatcher go in and out of the dispatcher's office.

[6] When plaintiff was left in Columbia, there is no evidence that the bag and its contents were thereafter in the exclusive possession and custody of defendant nor is there any evidence of negligence on the part of defendant. If we assume that the bailment arose at the time a bag was taken from the bus in Raleigh, there is no evidence as to the condition of the bag at that time. Indeed, there is no evidence that the bag removed was plaintiff's bag. If it was, the evidence is uncontradicted that the bag was not found in the place where plaintiff testified he left it. If a bailment relationship arose, defendant had the duty of exercising only a slight degree of care and diligence. "Slight care has been defined as an omission of the care which even the most inattentive and thoughtless of men take of their own concerns." Lee, North Carolina Law of Personal Property, *supra*. In our opinion, plaintiff has shown absolutely no evidence of negligence on the part of defendant.

One of the bases stated for defendant's motion for a directed verdict was that plaintiff had failed to offer sufficient evidence of defendant's negligence for the case to be submitted to the jury. We agree. The motion should have been allowed.

[7] Plaintiff's assignment of error No. 2 is directed to the court's rulings on the admissibility of certain evidence offered by the plaintiff. However, this assignment of error is not brought forward and argued in plaintiff's brief and we, therefore, deem it abandoned. Rule 28, Rules of Practice in the Court of Appeals of North Carolina.

Assignment of error No. 3 is directed to the court's allowing defendant to cross examine plaintiff with respect to the applicability of certain tariffs and limitations of liability which defendant had plead in its answer but which had been stricken on motion of plaintiff. In view of the result reached in this opinion, we do not deem it necessary or appropriate to discuss this assignment of error.

Affirmed.

Judges BROCK and GRAHAM concur.