JAMES A. COLE, JR., ADMINISTRATOR OF THE ESTATE OF JAMES ANDERSON COLE, III v. DUKE POWER COMPANY

No. 8514SC1323

(Filed 3 June 1986)

1. **Damages § 11— punitive damages for gross negligence—gross negligence and willful and wanton negligence not the same**

    N.C.G.S. § 28A-18-2 allows for a recovery of punitive damages upon a showing of "gross negligence," and "gross negligence" is not merely a restatement of the willful and wanton negligence test.

2. **Electricity § 5— high voltage wires in cabinet—child electrocuted—sufficiency of evidence of gross negligence**

    Evidence in a wrongful death action was sufficient for the jury to find that defendant was grossly negligent where it tended to show that defendant maintained in a residential area a cabinet which contained extremely high voltage wires but which carried no signs warning of danger or high voltage; children played around the cabinet which was not bolted down and which was inspected no more than twice in nine years; decedent child entered the cabinet to hide during a children's game and was electrocuted; at the time of the accident, two of the cabinet's locks were found inside and one lock was never found; the inspection card on the cabinet could not have been correct because it bore entries regarding conditions of parts which were not even on the

cabinet in question; and the cabinet was not constructed in accordance with the National Electrical Safety Code.

**3. Electricity §§ 4, 5— child electrocuted—child not a trespasser—duty of power company**

There was no merit to defendant's contention in a wrongful death action that decedent was a trespasser and as such the only duty which it owed to him was to refrain from willfully or wantonly injuring him, since defendant did not own the property on which the accident occurred but merely had an easement over the property, and decedent had the permission of landowners to play on the property and thus was not a trespasser.

**4. Electricity § 9— high voltage wires in cabinet—child electrocuted—no insulating negligence**

There was no merit to defendant's contention that it was entitled to a directed verdict in a wrongful death action because any negligence on its part was insulated by the conduct of a third person who removed padlocks from defendant's cabinet containing high voltage wires, an act over which defendant had no control, since there was no direct or circumstantial evidence from which a jury could reasonably find that defendant's alleged negligence was insulated by the act of some third person, and, even if the jury had found that someone else had been responsible for removing the locks from the cabinet, it could still have held defendant liable because of its negligence in failing to warn, failing properly to construct the cabinet, failing to insulate the wires, or a combination of these reasons.

**5. Negligence § 44— child electrocuted—1.5 million dollars not excessive verdict**

In a wrongful death action where decedent was electrocuted when he entered an unlocked, unlabeled cabinet containing extremely high voltage uninsulated wires, the trial court did not err in refusing to set aside the verdict awarding 1.5 million dollars in compensatory damages as being excessive and not in accordance with the evidence.

APPEAL by defendant from *Brewer, Judge.* Judgment entered 25 January 1985 in Superior Court, DURHAM County. Heard in the Court of Appeals 13 May 1986.

This appeal arises out of an action for wrongful death brought pursuant to G.S. 28A-18-2. On 23 May 1978, James Anderson Cole III was electrocuted when he entered an unlocked, unlabeled cabinet containing uninsulated wires transmitting 12,470 volts of electricity. On 20 August 1982, the trial court entered summary judgment against the plaintiff. This Court reversed that decision in an opinion published in 68 N.C. App. 159, 314 S.E. 2d 808 (1984). In an order found at 311 N.C. 752, 321 S.E. 2d 129 (1984), the Supreme Court denied the defendant's petition for discretionary review.

At trial the evidence showed the following facts: In November 1968 the defendant, Duke Power Company, began installing an electrical system in the Hope Valley area of Durham. As part of the system Duke installed a padmounted primary cabinet in a wooded area near the Cole home. The location was on the property line of two of the Coles' neighbors. The metal cabinet, which contained two doors, was three and one-half feet wide, four feet deep, four and one-half feet high and weighed four hundred and sixty pounds. The cabinet contained wires, some parts of which were uninsulated, that transmitted 12,470 volts of electricity. The doors on the cabinet were designed to be padlocked. The cabinet carried no signs warning of danger or high voltage. The only thing which identified the box as belonging to Duke Power Company was the fact that Duke's name was engraved on the locks which were supposed to be used to secure the cabinet. There were no wires visible entering or leaving the cabinet. The reason a Duke employee gave for the failure to place warnings on the box was that the company was afraid warnings would scare the neighbors.

The neighborhood children, with the consent of the property owners, played in the wooded area where the cabinet was located. The evidence also showed that the children actually played on top of the cabinet and scratched their names in the cabinet. On 23 May 1978, at approximately 8:45 p.m., James Anderson Cole III and a friend were going to enter the unlocked cabinet to hide during a children's game. Once inside the cabinet Cole was electrocuted and his friend, who had not yet gotten into the cabinet, was burned.

There was evidence presented that the cabinet had been inspected on two occasions, the last time some seven weeks prior to the accident. The inspection card showed that the cabinet was locked and in good condition at that time. However, there was also evidence that the cabinet had been unlocked some six months prior to the accident and at the time of the accident two of the three locks were found inside the cabinet and the third lock was never found. There was further evidence that the inspection card could not have been correct because it bore entries regarding conditions of parts which were not even on the cabinet in question. Furthermore, there was evidence presented that the cabinet was not constructed in accordance with the National Electrical Safety

Code. Duke also presented evidence which was designed to persuade the jury that Cole had cut the lock off the cabinet with a hacksaw sometime prior to the night in question.

Based upon the evidence the court submitted issues of negligence, gross negligence, contributory negligence, and compensatory and punitive damages. The jury found that Duke was negligent, that Anderson Cole was not contributorily negligent and that Duke was also grossly negligent. The jury found that the plaintiff was entitled to recover $1,500,000.00 in compensatory damages and $1,500,000.00 in punitive damages. From a judgment of $3,000,000.00 entered upon the verdict, defendant appealed.

*Pulley, Watson, King & Hofler, by W. Paul Pulley, Jr. and Tracy Kenyon Lischer, for plaintiff appellee.*

*William I. Ward, Jr., W. Edward Poe, Jr.; Parker, Poe, Thompson, Bernstein, Gage & Preston, by Irvin W. Hankins III; and Newsom, Graham, Hedrick, Bryson & Kennon, by Lewis A. Cheek and Joel M. Craig, for defendant appellant.*

ARNOLD, Judge.

### PUNITIVE DAMAGES

[1] Defendant first contends the trial court erred in refusing to dismiss plaintiff's claim for punitive damages, and in its instructions regarding the conduct which would justify an award of punitive damages. G.S. 28A-18-2 in pertinent part provides:

(a) When the death of a person is caused by a wrongful act, neglect or default of another, such as would, if the injured person had lived, have entitled him to an action for damages therefor, the person or corporation that would have been so liable, and his or their personal representatives or collectors, shall be liable to an action for damages, to be brought by the personal representative or collector of the decedent; and this notwithstanding the death, and although the wrongful act, neglect or default, causing the death, amounts in law to a felony. . . .

(b) Damages recoverable for death by wrongful act include:

. . . .

Cole v. Duke Power Co.

> (5) Such punitive damages as the decedent could have recovered had he survived, and punitive damages for wrongfully causing the death of the decedent through maliciousness, wilful or wanton injury, or gross negligence.

Defendant argues that the only types of conduct which can justify an award of punitive damages are an intentional tort, and wilful and wanton negligence. Defendant further contends that the words "gross negligence" do not create a new category of conduct for which punitive damages may be awarded in wrongful death actions, but that gross negligence is merely a restatement of the wilful and wanton negligence test. We disagree.

At common law punitive damages may be recovered only upon a showing of malicious, wilful or wanton conduct. *See Hinson v. Dawson,* 244 N.C. 23, 92 S.E. 2d 393 (1952). However, there is no right of action for wrongful death under the common law. *Willis v. Power Co.,* 42 N.C. App. 582, 257 S.E. 2d 471 (1979). The right to recover damages for wrongful death is purely statutory and exists only by virtue of the wrongful death statute. *Gay v. Thompson,* 266 N.C. 394, 146 S.E. 2d 425 (1966). Therefore, we must look to the terms of G.S. 28A-18-2 to determine when punitive damages may be awarded. The statute provides that:

> Damages recoverable for death by wrongful act include:
>
> . . . .
>
> Such punitive damages as the decedent could have recovered had he survived, *and* punitive damages for wrongfully causing the death of the decedent through maliciousness, wilful or wanton injury, *or* gross negligence.

G.S. 28A-18-2(b)(5) (emphasis added). In determining the meaning of the statute we must interpret its language in light of the following well-established canons of statutory construction.

> The intent of the Legislature controls the interpretation of a statute. *Burgess v. Brewing Co.,* 298 N.C. 520, 259 S.E. 2d 248 (1979). In ascertaining the intent of the Legislature, it is proper to consider judicial decisions affecting the constitutionality of prior statutes dealing with the same subject matter, and legislative changes, if any, made subsequent to such

decisions. *State v. Fulcher*, 294 N.C. 503, 243 S.E. 2d 338 (1978); *Milk Commission v. Food Stores*, 270 N.C. 323, 154 S.E. 2d 548 (1967); *Ingram v. Johnson, Comr. of Revenue*, 260 N.C. 697, 133 S.E. 2d 662 (1963). Word and phrases of a statute may not be interpreted out of context; rather, individual expressions must be interpreted as part of a composite whole, in a manner which harmonizes with the other provisions of the statute and which gives effect to the reason and purpose of the statute. *Burgess v. Brewing Co., supra; In re Hardy*, 294 N.C. 90, 240 S.E. 2d 367 (1978); *Watson Industries v. Shaw, Comr. of Revenue*, 235 N.C. 203, 69 S.E. 2d 505 (1952). To this end, a statute must be construed, if possible, so as to give effect to every provision, it being presumed that the Legislature did not intend any of the statute's provisions to be surplusage. *State v. Williams*, 286 N.C. 422, 212 S.E. 2d 113 (1975); *State v. Harvey*, 281 N.C. 1, 187 S.E. 2d 706 (1972).

*Jolly v. Wright*, 300 N.C. 83, 86, 265 S.E. 2d 135, 139 (1980).

Application of these principles leads to the conclusion that G.S. 28A-18-2 allows for the award of punitive damages upon the proof of gross negligence. By providing for recovery of punitive damages upon a showing of "maliciousness, wilful or wanton injury, *or* gross negligence" it appears that the General Assembly intended to establish three separate categories of conduct which would afford a recovery. As Judge Whichard said in his concurring opinion in *Beck v. Carolina Power & Light Co.*, 57 N.C. App. 373, 386, 291 S.E. 2d 897, 905 (1982), "[t]o treat the G.S. 28A-18-2(b)(5) phrases 'wilful or wanton injury' and 'gross negligence' as synonymous . . . effectively renders one or the other mere surplusage, contrary to the . . . foregoing rule of construction." Thus, we hold that G.S. 28A-18-2 allows for a recovery of punitive damages upon a showing of "gross negligence."

[2] Gross negligence is not defined by the statute, however, under prior case law gross negligence is something less than wilful and wanton conduct. *See Smith v. Stepp*, 257 N.C. 422, 125 S.E. 2d 903 (1962); *see also Clott v. Greyhound Lines*, 9 N.C. App. 604, 177 S.E. 2d 438 (1970), *rev'd on other grounds*, 278 N.C. 378, 180 S.E. 2d 102 (1971). Using this definition, we find that there is

Cole v. Duke Power Co.

evidence from which the jury could find that Duke was "grossly negligent."

The court gave the following instruction as to the issue of gross negligence:

Ordinary negligence is the lack of reasonable care. Gross negligence is an extreme departure from the ordinary standard of conduct. It is a very great danger. It is negligence materially greater than ordinary negligence. The difference is one of degree.

Gross negligence is negligence of an aggravated character and a gross failure to exercise reasonable care.

*The term implies a thoughtless disregard of consequences without exerting any effort to avoid it.*

Gross negligence means a greater absence of reasonable care than is implied by the term, ordinary negligence.

The plaintiff contends and the defendant denies that the defendant was grossly negligent in the following respects:

The defendant failed to place warning signs on the padmounted cabinet in question. *Now, the law requires an electric utility company to use reasonable care to protect the public from exposure to dangerous electric wires.*

Considering all precautions used by Duke Power Company to protect the public from the high-voltage wires within the padmounted cabinet on May the 23rd, 1978, *if you find that the failure additionally to place warning signs on the cabinet on or before the date in question constituted an extreme departure from reasonable care and evidenced a thoughtless disregard for protection of the public without any rational justification, then such failure would be gross negligence.*

As to this issue the plaintiff has offered evidence tending to show the padmounted cabinet was installed in 1969. The wires inside were extremely high voltage and deadly. The cabinet was located in a residential area where many children played. The cabinet was not bolted down. It was inspected no more than twice in nine years.

In 1975, one locking device failed and was replaced by hasp padlocks with exposed screws. There were no interior barriers and no double independent locking systems.

Warnings could have been placed on the cabinet at regular inspections at minimal cost and inconvenience.

The box, or cabinet, had nothing on it to indicate the danger inside or who owned the box.

The defendant offered evidence tending to show the cabinet had a reasonably secure locking system. Neither the 1973 *Code* nor industry practice required warning signs.

The cabinet had been inspected in April, 1978 and was found secure. The locking mechanisms provided adequate protection without warnings.

This is what some of the evidence offered by the plaintiff and defendant on this issue tends to show. You decide what the evidence does show.

Now, I instruct you that if the plaintiff has proved by the greater weight of the evidence that the defendant, Duke Power Company, was grossly negligent in the following respects:

That it failed to place warning signs on the padmounted cabinet on or before May 23rd, 1978; say, if the plaintiff has proved by the greater weight of the evidence that the defendant was grossly negligent in this respect and further proved that such gross negligence was a proximate cause of Anderson Cole's death as I have defined proximate cause to you, then you must answer this issue, yes, in favor of the plaintiff.

If the plaintiff has failed to prove such gross negligence or proximate cause, then you must answer this issue, no, in favor of the defendant, Duke Power Company.

If you answer the third issue, yes, in favor of the plaintiff, then you will answer both the fourth and fifth issues. (Emphasis added.)

---

---

These instructions were proper and correctly stated the law as to the issue of gross negligence. Indeed, the emphasized portions above seem favorable to defendant.

While we need not rule on this issue, we believe that there was also evidence from which a jury could have found that the defendant's actions rose to the level of wilful and wanton conduct. Thus, we believe the trial court could have submitted this issue also.

## LEGAL DUTIES OF UTILITIES

[3] Duke also contends the trial court erred by denying its motion for a directed verdict as to the compensatory damage issue. Duke argues that Anderson Cole was a trespasser and as such the only duty which it owed to him was to refrain from wilfully or wantonly injuring him. Thus, they contend the court erred by allowing the jury to determine whether Duke was negligent by its failure to warn, failure to insulate the wires and by failing to have a double locking device on the cabinet. We disagree.

In *Hale v. Power Co.*, 40 N.C. App. 202, 204, 252 S.E. 2d 265, 267 (1979), this Court stated the following standard regarding the duty of utilities:

> Our courts have repeatedly stated that a supplier of electricity owes the highest degree of care. *See Small v. Southern Public Utilities Co.*, 200 N.C. 719, 158 S.E. 385 (1931), and cases cited therein. This is not because there exists a varying standard of duty for determining negligence, but because of the "very dangerous nature of electricity and the serious and often fatal consequences of negligent default in its control and use." *Turner v. Southern Power Co.*, 154 N.C. 131, 136, 69 S.E. 767, 769 (1910). "The danger is great, and care and watchfulness must be commensurate to it." *Haynes v. The Raleigh Gas Co.*, 114 N.C. 203, 211, 19 S.E. 344, 346 (1894). "The standard is always the rule of the prudent man," so what reasonable care is "varies . . . in the presence of different conditions." *Small v. Southern Public Utilities Co.*, *supra* at 722, 158 S.E. at 386.

Duke argues that their duty to Anderson Cole was lessened because he was a trespasser; and that because Cole was a tres-

passer they only had a duty not to wilfully and wantonly injure him.

Duke did not own the property on which this cabinet was located, but merely had an easement over the property. All the evidence showed that Anderson Cole had the permission of the landowners to play on the property. Thus, Cole was not a trespasser as that term has been defined by our case law. We hold, consistent with the rule announced by our Supreme Court in *Benton v. Public-Service Corporation*, 165 N.C. 354, 81 S.E. 448 (1914), that since Cole was not a trespasser on any real property owned by Duke the defendant is not entitled to have its legal duty reduced. Under the rationale proposed by Duke, the only time that the utility company would be liable to people who come into contact with any of their equipment is when the injury is caused by a wilful and wanton action of the utility. This is not the law. As we have consistently held, suppliers of electricity owe the public the "highest degree of care" because of the "very dangerous nature of electricity."

[4]   Duke further argues that it was entitled to a directed verdict because any negligence on the part of Duke was insulated by the conduct of a third person. Duke argues that Cole would not have been killed "but for the intervening wrongful act of removal of the padlock which Duke Power placed on the cabinet, an act over which Duke Power Company had no control and of which it had no knowledge."

In *Hairston v. Alexander Tank & Equipment Co.*, 310 N.C. 227, 236-38, 311 S.E. 2d 559, 566-67 (1984), Justice Martin set forth the following statement of law regarding insulating negligence:

> Insulating negligence means something more than a concurrent and contributing cause. It is not to be invoked as determinative merely upon proof of negligent conduct on the part of each of two persons, acting independently, whose acts unite to cause a single injury. *Essick v. Lexington*, 233 N.C. 600, 65 S.E. 2d 220 (1951); *Evans v. Johnson*, 225 N.C. 238, 34 S.E. 2d 73 (1945). *See also* 65 C.J.S. *Negligence* § 111(2) (1966). Contributing negligence signifies contribution rather than independent or sole proximate cause. *Essick v. Lexington, supra; Noah v. R.R.*, 229 N.C. 176, 47 S.E. 2d 844 (1948).

The following analysis of the doctrine of insulating negligence is determinative with respect to this issue:

"An efficient intervening cause is a new proximate cause which breaks the connection with the original cause and becomes itself solely responsible for the result in question. It must be an independent force, entirely superseding the original action and rendering its effect in the causation remote. It is immaterial how many new elements or forces have been introduced, if the original cause remains active, the liability for its result is not shifted. Thus, where a horse is left unhitched in the street and unattended, and is maliciously frightened by a stranger and runs away: but for the intervening act, he would not have run away and the injury would not have occurred; yet it was the negligence of the driver in the first instance which made the runaway possible. This negligence has not been superseded nor obliterated, and the driver is responsible for the injuries resulting. If, however, the intervening responsible cause be of such a nature that it would be unreasonable to expect a prudent man to anticipate its happening, he will not be responsible for damage resulting solely from the intervention. The intervening cause may be culpable, intentional, or merely negligent."

*Harton v. Telephone Co.*, 141 N.C. 455, 462-63, 54 S.E. 299, 301-02 (1906) (citation omitted).

It is immaterial how many new events or forces have been introduced if the original cause remains operative and in force. In order for the conduct of the intervening agent to break the sequence of events and stay the operative force of the negligence of the original wrongdoer, the intervening conduct must be of such nature and kind that the original wrongdoer had no reasonable ground to anticipate it. . . .

"The test by which the negligent conduct of one is to be insulated as a matter of law by the independent negligent act of another, is reasonable unforeseeability on the part of the original actor of the subsequent intervening act and resultant injury." . . .

In 38 Am. Jur., Negligence, Sec. 67, pp. 722 and 723, the principle is stated this way: "In order to be effective as a cause superseding prior negligence, the new, independent, intervening cause must be one not produced by the wrongful act or omission, but independent of it, and adequate to bring about the injurious result; a cause which interrupts the natural sequence of events, turns aside their cause, prevents the natural and probable result of the original act or omission, and produces a different result, that reasonably might not have been anticipated."

*Riddle v. Artis, supra,* 243 N.C. at 671, 91 S.E. 2d at 896-97 (citations omitted).

It is true that

[a] man's responsibility for his negligence must end somewhere. If the connection between negligence and the injury appears unnatural, unreasonable and improbable in the light of common experience, the negligence, if deemed a cause of the injury at all, is to be considered a remote rather than a proximate cause. It imposes too heavy a responsibility for negligence to hold the tort feasor responsible for what is unusual and unlikely to happen or for what was only remotely and slightly probable.

*Phelps v. Winston-Salem,* 272 N.C. 24, 30, 157 S.E. 2d 719, 724 (1967). *See also* Restatement (Second) of Torts § 435(2) (1965).

We have examined the record and have found no direct evidence or circumstantial evidence from which a jury could reasonably find that Duke's alleged negligence was insulated by the act of some third person. Even if the jury had found that someone else had been responsible for removing the locks from the cabinet, it could still have held Duke liable because of Duke's negligence in failing to warn, failing to properly construct the cabinet, failing to insulate the wires, or a combination of these reasons.

Defendant also argues the court erred by failing to instruct on insulated negligence and Anderson Cole as a trespasser. As we have previously stated, the trial court properly ruled on these issues. The defendant also argues the court erred in instructing

on the issue of the duty of electrical utilities. We have examined the court's instructions and find them to be fair, complete, and an accurate statement of the law.

## COMPENSATORY DAMAGES

[5]   Duke next contends the "court erred in refusing to set aside the verdict because the damages awarded were excessive and not in accordance with the evidence." The question of whether damages are excessive thus warranting the trial court to set aside the verdict or to render a judgment notwithstanding the verdict is within the sound discretion of the trial court. *Evans v. Coach Co.*, 251 N.C. 324, 111 S.E. 2d 187 (1959). The court's ruling on such a question will not be reversed absent a showing that the court abused its discretion. *Hinton v. Cline*, 238 N.C. 136, 76 S.E. 2d 162 (1953). This test was reaffirmed and explained by our Supreme Court in *Worthington v. Bynum and Cogdell v. Bynum*, 305 N.C. 478, 290 S.E. 2d 599 (1982). In *Worthington* Justice Copeland, writing for the Court, stated:

> In conclusion, we note that the trial judges of this state have traditionally exercised their discretionary power to grant a new trial in civil cases quite sparingly in proper deference to the finality and sanctity of the jury's findings. We believe that our appellate courts should place great faith and confidence in the ability of our trial judges to make the right decision, fairly and without partiality, regarding the necessity for a new trial. Due to their active participation in the trial, their first-hand acquaintance with the evidence presented, their observances of the parties, the witnesses, the jurors and the attorneys involved, and their knowledge of various other attendant circumstances, presiding judges have the superior advantage in best determining what justice requires in a certain case. Because of this, we find much wisdom in the remark made many years ago by Justice Livingston of the United States Supreme Court that "there would be more danger of injury in revising matters of this kind than what might result now and then from an arbitrary or improper exercise of this discretion." *Insurance Co. v. Hodgson*, 10 U.S. (6 Cranch) 206, 218 (1810). Consequently, an appellate court should not disturb a discretionary Rule 59 order unless it is reasonably convinced by the cold record that the

trial judge's ruling probably amounted to a substantial miscarriage of justice.

*Id.* at 487, 290 S.E. 2d at 605. We are not convinced from the record that the court's denial of the defendant's motion to set aside the verdict amounted to a substantial miscarriage of justice. Thus, we find no error in the court's ruling.

### EVIDENTIARY RULINGS

Defendant also contends the trial court erred by admitting and excluding certain evidence at trial. Duke argues that the court erred in admitting evidence regarding the condition of the padmounted cabinet, warning signs which other utilities use on their equipment, the absence of metal shavings in a photograph and evidence regarding the character of the deceased. We have reviewed each of these contentions and find no prejudicial error in the trial court's rulings.

Defendant next argues the court erred by excluding the testimony of one of their experts regarding the origin of certain metal shavings found on the pad under the cabinet. On the night of the accident Officer Robinson investigated the accident scene. At the time of his original investigation Robinson did not see any metal shavings. Approximately two hours later Duke's operations manager called Robinson back to the scene to collect some shiny brass shavings which the manager had discovered after Robinson left the scene. In June 1978, defendant sent these shavings to Pittsburgh Testing Laboratory. On 15 August 1978 the laboratory issued a report which contained the following pertinent findings:

> The lock is oxidized, more on those surfaces expected to be exposed: it is not much oxidized on the bottom and both ends of the shackle are virtually free of oxidation. No shavings have been removed from the bottom or sides of the lock; some shavings had been removed from the shackle but essentially all of this was done from the unoxidized free end of the shackle, i.e., from that part of the shackle "in" the lock, if the lock be locked. There is no possibility, in our opinion, for the quantity of brass shavings to have come from any place except this notched end of the shackle. If the shavings came from the lock, they were taken when the lock was open.

The brass shavings look "brassy", have a brass color. But inspection shows that the collection is perhaps 30% brass shavings, the remainder being recognizable wood and brick fragments and, probably not proved, sand (silica), glaze, mica (muscovite probably), feldspars and several other darker minerals. The brass pieces themselves are all highly worked: most could easily be file shavings but some have the long curlicue shape of turnings, more probably drill than lathe (there is no indication anywhere on the outside of the lock that a drill bit had been used on it). A few (three, by count) of the brass pieces had high temperature "temper" colors over part of the surface—again not hand tool likely and these were file shavings like configurations. In sum the sample is not homogeneous, even in the type of shavings; all could not in any likelihood have come from the lock.

Based upon the defendant's report the plaintiff did not do tests on the shavings. On 4 January 1985, the Friday before the trial was to begin on Monday, 7 January, Duke informed the plaintiff that it intended to call a different expert from Pittsburgh Testing who would offer an opinion regarding the origin of the shavings. The plaintiff made a motion *in limine* to exclude this testimony. Defendant contends the court's order excluding the new evidence was error. We find no error in the trial court's action. The court properly concluded that it would be unfair to allow defendant to put on new evidence in support of its case when the plaintiff had not had an adequate opportunity to prepare for this evidence. If defendant intended to offer additional evidence regarding the source of the brass shavings they should have been able to acquire the evidence during the seven years this litigation was pending rather than attempting to "spring it" upon the plaintiff some three days prior to trial. We believe the trial court properly excluded the testimony.

We have also reviewed the other arguments regarding the exclusion of evidence and find no error in the court's actions.

Our review of the record convinces us that the trial court did an admirable job in the handling of this most difficult trial. We believe that both sides had a fair and impartial hearing of this matter. Thus, in this cause we find

No error.

Judges WELLS and BECTON concur.