JOANNA COWAN, Executrix of the Estate of JAMES DOUGLAS JACOBS v. BRIAN CENTER MANAGEMENT CORPORATION, BRIAN CENTER OF ASHEBORO, INC., ASHEBORO FAMILY PHYSICIANS, INC., LAWRENCE E. PERRY and ROBERT VANDENBERG

No. 9215SC140

(Filed 6 April 1993)

1. **Death § 31 (NCI4th)— wrongful death statute—gross negligence—definition**

   "Gross negligence" as that term is used in the wrongful death statute is something less than willful and wanton conduct, and includes the absence of even slight care, indifference to the rights and welfare of others, and negligence of an aggravated character. N.C.G.S. § 28A-18-2(b)(5).

   **Am Jur 2d, Death §§ 1 et seq.**

   **Modern status of rule denying a common-law recovery for wrongful death. 61 ALR3d 906.**

2. **Damages § 132 (NCI4th) — wrongful death — punitive damages — genuine issues of fact as to gross negligence — summary judgment improper**

In an action to recover for the wrongful death of a patient in defendant skilled nursing care facility, the trial court erred in granting the motion of defendant facility and defendant attending physicians for partial summary judgment on the issue of punitive damages, since the evidence on file indicated the existence of genuine issues of material fact regarding gross negligence on the part of defendants in continuing diuretics with no evidence of congestive heart failure, failure to monitor decedent's weight on a weekly basis, failure to monitor blood values to determine the state of hydration, failure to investigate weight loss, failure to monitor fluid and nutrition status, failure to monitor pulse and blood pressure on a weekly basis, failure to maintain accurate food consumption charts, failure to make an adequate physical assessment of decedent, and failure to timely contact physicians.

Appeal by plaintiffs from order entered 12 November 1991 by Judge J.B. Allen, Jr., in Alamance County Superior Court. Heard in the Court of Appeals 11 January 1993.

*Law Offices of Grover C. McCain, Jr., by Grover C. McCain, Jr. and Martin A. Rosenberg, for plaintiff-appellant.*

*Tuggle Duggins & Meschan, P.A., by J. Reed Johnston, Jr. for defendants-appellees Brian Center Management Corporation and Brian Center of Asheboro, Inc.*

*Yates, McLamb & Weyher, by Bruce W. Berger and George B. Autry, Jr., for defendants-appellees Asheboro Family Physicians, Inc., Lawrence E. Perry and Robert Vandenberg.*

LEWIS, Judge.

On 7 June 1990 plaintiff, executrix for the estate of her father, Dr. Jacobs, filed this action seeking compensatory and punitive damages for the wrongful death of her father pursuant to N.C.G.S. § 28A-18-2. The defendants are Brian Center of Asheboro, Inc., a skilled nursing care facility, Brian Center Management Corporation, its parent company (both hereinafter referred to as "Brian Center"), the physicians assigned to care for Dr. Jacobs, and their

professional association, Asheboro Family Physicians, Inc. (hereinafter collectively referred to as "the physicians"). In October 1991 both the physicians and Brian Center filed a motion for partial summary judgment on the issue of punitive damages. Judge Allen held a hearing on 4 November and granted defendants' motions on 12 November. Plaintiff appeals from this partial summary judgment order.

The evidence, viewed in the light most favorable to plaintiff as it must be on this motion for summary judgment, *Snipes v. Jackson*, 69 N.C. App. 64, 316 S.E.2d 657, *appeal dismissed and disc. rev. denied*, 312 N.C. 85, 321 S.E.2d 899 (1984), indicates that on 17 March 1989 Dr. Jacobs, then 91 years old, was taken to the emergency room at Alamance Memorial Hospital with "complaints of progressive weakness and somnolence for a period of three days." Dr. Jacobs was admitted to the hospital and treated by Dr. Javed Masoud for congestive heart failure, pleural effusion and dehydration. He was given diuretics to remove the fluid from his body tissues and lungs. In April 1989 blood testing performed at the hospital indicated upward fluctuation in Dr. Jacobs' blood, urine and nitrogen (BUN) levels. Such fluctuation indicates possible renal insufficiency, and thus requires careful attention to diuretic medications in order to maintain proper body fluid levels.

On 24 April 1989, Dr. Masoud discharged Dr. Jacobs to the Brian Center skilled nursing facility. The discharge summary listed, among other medications, two diuretics to be administered twice daily. Dr. Vandenberg, Dr. Jacobs' primary physician at the Brian Center, reviewed Dr. Jacobs' condition upon admission and recommended a continuation of the diuretic medications. Dr. Jacobs weighed 119 pounds when he was admitted to the Brian Center.

Nursing notes maintained by the Brian Center staff from April 24 to May 24 revealed no symptoms of congestive heart failure or pleural effusion. However, Dr. Jacobs' BUN levels during that period increased "to a dangerously high level of 84." Plaintiff points out that for the month of May the daily records of Dr. Jacobs' meal consumption were incomplete and sometimes inconsistent with the nurse's handwritten notes. Records of his meal consumption for the month of June were also incomplete. During this time Dr. Jacobs' was losing weight, so that by June 14 he only weighed 109½ pounds.

On June 19 Dr. Perry, Dr. Jacobs' other attending physician at the Brian Center, was informed of an acute episode of elevated blood pressure, respiratory difficulty and an inability to swallow. Dr. Jacobs' blood tests and elevated BUN levels revealed continuing dehydration. Dr. Perry ordered "Force Fluids." Dr. Jacobs continued on the same diuretics, and no further blood tests were ordered at the Brian Center.

In July and August the nurses noted problems with swollen, darkened feet, indicating possible circulatory and fluid problems, and early bed sores, but failed to inform the physicians of these developments. Dr. Vandenberg saw Dr. Jacobs on 24 August, but did not reassess weight loss, hydration status, or medication levels. Dr. Jacobs' condition deteriorated in early September, and on 8 September he was transferred to Randolph Hospital. Upon admission his BUN levels were at 136 and he was suffering from "profound dehydration." Dr. Jacobs died from pneumonia on 17 September 1989.

---

Plaintiff presents three arguments on appeal. First, she alleges defendants, who had the burden of proof on their motions for summary judgment, could not have been entitled to summary judgment since the only evidence before the court consisted of the documents on file, which included plaintiff's complaint, the expected testimony of plaintiff's experts, and an affidavit of Dr. Irving Vinger. Second, plaintiff contends that genuine issues of material fact existed on the issue of gross negligence based on the admissions and arguments of defense counsel. Finally, plaintiff objects to the admission of the deposition of Dr. Javed Masoud after the close of the 4 November hearing without giving plaintiff the opportunity to respond.

Initially, we must determine what level of conduct must be shown to entitle plaintiff to punitive damages in a wrongful death action. We will then ascertain whether defendants met their burden of proof on their summary judgment motions.

A.   Wrongful Death Statute: N.C.G.S. § 28A-18-2

A wrongful death action must be brought pursuant to the wrongful death statute, because no such cause of action existed at common law. See Cole v. Duke Power Co., 81 N.C. App. 213, 217, 344 S.E.2d 130, 132, disc. rev. denied, 318 N.C. 281, 347 S.E.2d 462 (1986). According to the statute, punitive damages may be

COWAN v. BRIAN CENTER MANAGEMENT CORP.

[109 N.C. App. 443 (1993)]

recovered "for wrongfully causing the death of the decedent through maliciousness, wilful or wanton injury, or gross negligence . . . ." N.C.G.S. § 28A-18-2(b)(5) (Cum. Supp. 1992).

Defendant physicians strenuously argue that proof of gross negligence is not enough to recover punitive damages. Finding no definition in the statute, the physicians contend the legislature intended the term "gross negligence" to be synonymous with wanton conduct. *See Hinson v. Dawson*, 244 N.C. 23, 92 S.E.2d 393 (1956). Brian Center, relying on *Hinson*, contends that the term "gross negligence" is too vague unless it is defined as willful and wanton conduct, meaning "conscious and intentional disregard of and indifference to the rights and safety of others." *Id.* at 28, 92 S.E.2d at 396-97. Defendants highlight the case of *Robinson v. Duszynski*, 36 N.C. App. 103, 243 S.E.2d 148 (1978), wherein the Court addressed the definition of gross negligence under the wrongful death statute. The Court, citing *Hinson*, stated "[i]n cases where plaintiff's action was grounded on negligence, our courts have referred to gross negligence as the basis for recovery of punitive damages, using that term in the sense of wanton conduct." *Id.* at 106, 243 S.E.2d at 150.

Brian Center challenges the constitutionality of a gross negligence standard under two recent cases, *Pacific Mutual Life Ins. Co. v. Haslip*, 499 U.S. ---, 111 S. Ct. 1032, 113 L. Ed. 2d 1 (1991) and *Mattison v. Dallas Carrier Corp.*, 947 F.2d 95 (4th Cir. 1991). We decline to address this issue, because it is well settled that a constitutional issue may not be raised for the first time on appeal. *Commissioner of Ins. v. Rate Bureau*, 300 N.C. 381, 428, 269 S.E.2d 547, 577 (1980); *Rivenbark v. Southmark Corp.*, 93 N.C. App. 414, 378 S.E.2d 196 (1989) (although complaint dismissed with prejudice, cannot raise constitutional question for first time on appeal).

We note that the caselaw is somewhat contradictory on the definition of gross negligence. Defendants acknowledge the cases cited by plaintiff, including *Cole v. Duke Power Co.*, 81 N.C. App. 213, 344 S.E.2d 130, *disc. rev. denied*, 318 N.C. 281, 347 S.E.2d 462 (1986), and *Beck v. Carolina Power & Light Co.*, 57 N.C. App. 373, 291 S.E.2d 897, *aff'd per curiam*, 307 N.C. 267, 297 S.E.2d 397 (1982). *Cole* and *Beck* hold that gross negligence is distinct from willful and wanton conduct. In *Cole* the Court stated that "[b]y providing for recovery of punitive damages upon a showing

of 'maliciousness, wilful or wanton injury, *or* gross negligence' it appears that the General Assembly intended to establish three separate categories of conduct which would afford a recovery." 81 N.C. App. at 218, 344 S.E.2d at 133. Thus, "gross negligence is something less than wilful and wanton conduct," and is "negligence of an aggravated character." *Id.* at 218-19, 344 S.E.2d at 133 (approving jury instructions). *Beck* defines gross negligence as the "absence of even slight care," and approved jury instructions describing it as "indifference to the rights and welfare of others." 57 N.C. App. at 384-85, 291 S.E.2d at 904.

Recently, in *Henderson v. LeBauer*, 101 N.C. App. 255, 399 S.E.2d 142, *disc. rev. denied*, 328 N.C. 731, 404 S.E.2d 868 (1991), this Court specifically recognized that recovery may be had under the wrongful death statute on the basis of gross negligence even in the absence of willful or wanton conduct. *Id.* at 262, 399 S.E.2d at 146 (*citing Cole*, 81 N.C. App. 213, 344 S.E.2d 130). The Court defined gross negligence as "negligence of an aggravated character." *Id.*

On the other hand, *Hinson* and *Robinson* both hold that gross negligence is equivalent to willful and wanton conduct. *Hinson*, 244 N.C. at 28, 92 S.E.2d at 396-97; *Robinson*, 36 N.C. App. at 106, 243 S.E.2d at 150. In *Berrier v. Thrift*, 107 N.C. App. 356, 420 S.E.2d 206 (1992) *disc. rev. denied*, 333 N.C. 254, 424 S.E.2d 918 (1993), this Court did not distinguish between gross negligence and willful and wanton conduct. It lumped all three terms together as one standard in approving the following jury instruction:

> In a case of alleged negligence, punitive damages may be awarded upon the showing that the negligence was gross, willful or wanton. Negligence is gross, willful or wanton when the wrongdoer acts with a conscious and intentional disregard of and indifference to the rights and safety of others.

107 N.C. App. at 360, 420 S.E.2d at 208.

[1]  In order to give effect to the wording of the wrongful death statute, we must treat gross negligence as something distinct from willful and wanton conduct. *See Cole*, 81 N.C. App. at 218, 344 S.E.2d at 133. We are guided by the more recent decisions of *Cole*, *Beck*, and *Henderson* in holding that gross negligence is "something less than willful and wanton conduct," *Cole*, 81 N.C. App. at 218, 344 S.E.2d at 133, and includes "the absence of even

slight care," *Beck*, 57 N.C. App. at 384, 291 S.E.2d at 904, "indifference to the rights and welfare of others," *id.*, and "negligence of an aggravated character." *Cole*, 81 N.C. App. at 219, 344 S.E.2d at 133; *Henderson*, 101 N.C. App. at 262, 399 S.E.2d at 146. We note that *Hinson*, decided in 1956, did not address the issue of punitive damages under the wrongful death statute.

## B. Summary Judgment

[2] Summary judgment is only appropriate where there are no genuine issues of material fact. N.C.G.S. § 1A-1, Rule 56(c) (1990). The party moving for summary judgment has the burden of proof, and the evidence must be viewed in the light most favorable to the nonmovant. *Snipes v. Jackson*, 69 N.C. App. 64, 316 S.E.2d 657, *appeal dismissed and disc. rev. denied*, 312 N.C. 85, 321 S.E.2d 899 (1984). In the absence of supporting affidavits, the motion for summary judgment is based upon "the pleadings, depositions, answers to interrogatories, and admissions on file . . . ." § 1A-1, Rule 56(c). Plaintiff points out it is for the jury to decide whether gross negligence existed. *See Berrier*, 107 N.C. App. at 360, 420 S.E.2d at 208 (the approved jury instructions included a statement that "[u]pon a showing of gross, willful or wanton negligence, whether to award punitive damages, and within reasonable limits, the amount to be awarded are matters within the sound discretion of the jury").

Plaintiff contends defendants, in order to be successful on their motion, must produce a forecast of their evidence which would be sufficient to compel a verdict in their favor at trial. *Coats v. Jones*, 63 N.C. App. 151, 303 S.E.2d 655, *aff'd*, 309 N.C. 815, 309 S.E.2d 253 (1983). In this case, defendants did not submit any affidavits in support of their motion. The court, therefore, could only have considered the documents on file, which consisted of the allegations in plaintiff's complaint, the expected testimony of plaintiff's experts set forth in a Designation of Experts, and an affidavit of Dr. Irving Vinger originally filed on 8 October 1990. Plaintiff maintains that the court could not have decided in favor of defendant based on this evidence, unless the court impermissibly considered the oral arguments of defendant as evidence, *Gebb v. Gebb*, 67 N.C. App. 104, 312 S.E.2d 691 (1984), and considered the documents cited in response to plaintiff's opposition to the motion.

We agree with plaintiff that the evidence on file indicated the existence of genuine issues of material fact regarding gross negligence on the part of defendants. The jury should be allowed

to determine whether defendants' conduct, although probably not willful and wanton, amounted to, among other things, "the absence of even slight care," "indifference to the rights and welfare of others," or "negligence of an aggravated character."

Plaintiff's expert, Dr. Vinger, stated in his affidavit that defendants' conduct amounted to gross negligence. Rather than relying upon this conclusion, however, plaintiff emphasizes that Dr. Vinger listed the specific breaches in his affidavit and subsequent deposition. These breaches include failure to make an adequate physical assessment of Dr. Jacobs, failure to monitor intake and output levels, failure to monitor weight loss, failure to monitor diuretic medications and recognize dehydration and fluid volume depletion, failure to keep accurate records, and failure to timely contact physicians. Dr. Vinger felt that Dr. Jacobs was in a life-threatening position on 4 September 1989, and that it was an "outrageous deviation of the standard of care and reckless disregard for the decedent's needs" to fail to notify a physician until 8 September.

Plaintiff contends the depositions of Dr. Haber and Dr. Miller corroborate Dr. Vinger's position, as do the depositions of nurses Karen McDonald and Linda Dury. Dr. Miller referred to the following deviations from the proper standard of care: continuation of diuretics with no evidence of congestive heart failure, failure to monitor decedent's weight on a weekly basis, failure to monitor blood values to determine the state of hydration, failure to investigate weight loss, and failure to monitor fluid and nutrition status. Dr. Haber agreed that the foregoing were breaches of the standard of care.

The nurses noted further deviations from the standard of care, such as chart discrepancies in food consumption and failure to monitor pulse and blood pressure on a weekly basis. Also, Nurse Dury stated the Brian Center was understaffed and had a history of negligent treatment of residents. Plaintiff refers to investigative reports which put Brian Center on notice of certain problems, such as prior failure to maintain proper documentation.

Defendants contend that plaintiff's evidence at the most shows only ordinary negligence. Defendants point out that the experts disagree on what would have been the proper course of treatment for Dr. Jacobs, and also disagree over whether gross negligence was involved. We believe that such disagreement shows the necessi-

ty of allowing the jury to decide the existence of gross negligence in this case. Furthermore, we note that matters regarding the credibility and weight of the evidence are for the jury. *Burrow v. Westinghouse Elec. Corp.*, 88 N.C. App. 347, 351, 363 S.E.2d 215, 218, *disc. rev. denied*, 322 N.C. 111, 367 S.E.2d 910 (1988).

Because we are reversing the order of partial summary judgment, we need not address plaintiff's remaining arguments.

Reversed and remanded.

Chief Judge ARNOLD and Judge COZORT concur.