STATE OF NORTH CAROLINA v. BOBBIE LEE BRADLEY

No. 886SC168

(Filed 18 October 1988)

1. Homicide § 21.8— second degree murder—evidence sufficient

The evidence was sufficient to support a conviction for second degree murder where defendant began to curse at the victim as she got out of her automobile and walked towards a convenience store; defendant loudly told the victim that he was going to kill her; an argument then ensued and defendant struck the victim in the face, knocking her to her knees; defendant then grabbed the victim by her hair and dragged her as she screamed to her automobile and threw her inside; the victim attempted to escape as defendant entered the automobile but defendant grabbed her again by the hair and prevented her from exiting the automobile; defendant started the car and sped out of the parking lot through a stop sign with the victim's feet hanging out of the automobile; the owner of the convenience store could hear the victim screaming even though he could no longer see the vehicle; the victim's four-year-old son was still in the vehicle; a highway patrolman arriving at the scene of an accident shortly thereafter found defendant kneeling over the victim's body on the shoulder of the road; the victim was dead with multiple cuts and bruises about her head, face, arms and legs; defendant told the officer that the victim had been driving and the officer noticed that defendant had an odor of alcohol about him; debris from the wreck and gouge marks in the pavement caused by the impact were located in the middle of the lane in which the other car had been traveling; the victim's son testified that defendant and the victim were fighting while driving down the road but apparently stopped just prior to the accident; defendant told the trooper at the hospital that the victim had been driving; and a sample of defendant's blood taken approximately three hours after the accident was determined to have a blood alcohol concentration of .108%.

2. Criminal Law §§ 146.1, 138.28— aggravating factor—prior convictions—improper reliance on prosecutor's assertion—not raised at trial—right to appeal waived

A defendant convicted of second degree murder waived his right to appeal any possible error in the district attorney's unsupported statements at sentencing regarding prior convictions by not objecting to them. Insofar as N.C.G.S. § 15A-1446(d)(5) allows a party to raise arguments regarding the sufficiency of the evidence to support a finding of fact at sentencing, it is inconsistent with the spirit and purpose of Rule 10(b)(2) of the Rules of Appellate Procedure and therefore ineffective.

APPEAL by defendant from *Griffin, Judge.* Judgment entered 22 September 1987 in Superior Court, HERTFORD County. Heard in the Court of Appeals 7 September 1988.

Defendant was charged by a proper bill of indictment with second degree murder in violation of N.C.G.S. § 14-17. Evidence presented at trial tended to show the following facts.

On 20 November 1986 at approximately 9:30 p.m., the defendant entered the Family Mart, a convenient store just north of Murfreesboro. Defendant had a conversation with someone and he began cursing. Defendant then bought a pack of cigarettes and told Louis Gore, the owner of the store, that he would wait outside the store for his father to come and pick him up.

Soon after defendant exited the Family Mart Ms. Joyce Jones, her son, Cadaris Jones, and a friend, Hattie Mae Lassiter, drove up to the store. As Ms. Jones and her friend got out of the automobile and started toward the store, defendant came from around the corner of the building and began to curse at Ms. Jones.

Mr. Gore testified that defendant loudly told Ms. Jones, "I'm going to kill you, kill you bitch before we get to Winton." An argument then ensued, and defendant ultimately struck Ms. Jones in the face, knocking her to her knees. Defendant then grabbed her by her hair and dragged her, as she screamed, approximately ten feet to her automobile and threw her inside. As defendant entered the automobile on the driver's side Ms. Jones attempted to escape, but defendant grabbed her again by the hair and prevented her from exiting the automobile. The defendant started the car and sped out of the parking lot and through a stop sign, with Ms. Jones's feet hanging out of the automobile. Mr. Gore testified that he could hear Ms. Jones screaming even after he could no longer see the vehicle. Cadaris, Ms. Jones's four-year-old son, was still in the vehicle.

Between 9:45 and 9:50 p.m. Trooper D. W. Banks of the North Carolina Highway Patrol arrived at the scene of an accident on highway 158, between Murfreesboro and Winton, and found the automobile in which defendant drove from the Family Mart, along with a second vehicle. He observed the body of Ms. Jones lying face down on the shoulder with defendant kneeling over her, crying. Banks examined Ms. Jones and determined that she was dead, noting that she had multiple cuts and bruises about her head, face, arms and legs. When asked what happened defendant

told the officer that Ms. Jones had been driving. Trooper Banks noticed that defendant had an odor of alcohol about him.

Two men were pinned in the second automobile. The driver, David Jordan, testified that he had been traveling on highway 158 from Winton to Murfreesboro at a speed below the limit due to the fact that it was raining. He stated that he "was just riding along and the next thing I know I came to, came to and they said that I had been in an accident and then I blacked out again."

Debris from the wreck, as well as gouge marks in the pavement caused by the impact, were located in the middle of the lane in which Mr. Jordan had been traveling. Cadaris, Ms. Jones's son, testified that defendant and Ms. Jones were fighting while driving down the road, but apparently stopped just prior to the accident.

Trooper Banks followed defendant to the hospital and interviewed him. Defendant again said that Ms. Jones had been driving. A sample of defendant's blood was taken approximately three hours after the accident. The blood was subsequently analyzed by the S.B.I. forensic chemical lab and determined to have a blood alcohol concentration of .108%.

Defendant was tried by a jury in the Superior Court of Hertford County and found guilty of second degree murder. He was sentenced to twenty years, exceeding the presumptive sentence of fifteen years.

*Attorney General Lacy H. Thornburg, by Associate Attorney General Linda Anne Morris, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Staples Hughes, for defendant appellant.*

ARNOLD, Judge.

[1] Defendant first contends that the evidence at trial was insufficient as a matter of law to support a conviction of any of the offenses submitted to the jury. Those offenses were: second degree murder, involuntary manslaughter, felony death by vehicle and misdemeanor death by vehicle.

Murder in the second degree is the lawful killing of a human being with malice but without premeditation and deliberation.

*State v. Robbins,* 309 N.C. 771, 775, 309 S.E. 2d 188, 190 (1983). While an intent to kill is not a necessary element of murder in the second degree, that crime does not exist in the absence of some intentional act sufficient to show malice and which proximately causes death. *State v. Lang,* 309 N.C. 512, 525, 308 S.E. 2d 317, 323 (1983); *State v. Wilkerson,* 295 N.C. 559, 247 S.E. 2d 905 (1978).

The Supreme Court has stated that there are three kinds of malice in the North Carolina law of homicide:

> One connotes a positive concept of express hatred, ill-will or spite, sometimes called actual, express, or particular malice.
>
> . . . Another kind of malice arises when an act which is inherently dangerous to human life is done so recklessly and wantonly as to manifest a mind utterly without regard for human life and social duty and deliberately bent on mischief.
>
> . . . Both these kinds of malice would support a conviction of murder in the second degree. There is, however, a third kind of malice which is defined as nothing more than "that condition of mind which prompts a person to take the life of another intentionally without just cause, excuse, or justification."

*State v. Reynolds,* 307 N.C. 184, 191, 297 S.E. 2d 532, 536 (1982) (citations omitted). It is the second kind of malice that was evidenced by defendant in the case at bar and also comports with the definition given in *State v. Wilkerson,* which is,

> any act evidencing "wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty and deliberately bent on mischief, though there may be no intention to injure a particular person" is sufficient to supply the malice necessary for second degree murder. Such an act will always be accompanied by a general intent to do the act itself but it need not be accompanied by a specific intent to accomplish any particular purpose or do any particular thing.

*Wilkerson,* 295 N.C. 559, 581, 247 S.E. 2d 905, 917 (1978).

The actions by the defendant were similar to the actions of defendant in *State v. Snyder,* 311 N.C. 391, 317 S.E. 2d 394, *disc.*

*rev. denied,* 312 N.C. 89, 321 S.E. 2d 906 (1984). There, the defendant, already intoxicated, drove to a local tavern where the owner of the bar refused to serve him more alcohol. After getting into an affray with the owner, defendant drove away at a high rate of speed, passing one motorist in a "no-passing" zone, hitting a motorcycle from behind and forcing it off the road, and finally running through a stop light and into an automobile killing all three passengers. *Id.* at 392-393, 317 S.E. 2d at 394-395. The Supreme Court upheld the defendant's conviction of second degree murder. *Id.*

The evidence in the case at bar is sufficient to support a conviction of second degree murder. We find no error in the judgment of the trial court and need not discuss the other three issues presented to the jury.

[2] The defendant's second contention is that the trial court committed error in admitting evidence of his prior convictions as aggravating factors at the sentencing hearing. He argues that the district attorney merely stated defendant's record without giving proof.

At the sentencing hearing, the district attorney recited a litany of past offenses by the defendant although he did not use original court records or certified copies as required by N.C.G.S. § 15A-1340.4(e). The Supreme Court in *State v. Swim* stated that "[U]nder the Fair Sentencing Act, a trial court may not find an aggravating factor where the only evidence to support it is the prosecutor's mere assertion that the factor exists." *Swim,* 316 N.C. 24, 32, 340 S.E. 2d 65, 70-71 (1986). This same sentiment was expressed by a panel of this Court in *State v. Mack* where it said that a prosecutor's unsupported remarks, standing alone, were insufficient to prove a defendant's prior convictions by a preponderance of the evidence. *Mack,* 87 N.C. App. 24, 34-35, 359 S.E. 2d 485, 492 (1987), *disc. rev. denied,* 321 N.C. 477, 364 S.E. 2d 663 (1988).

Defendant did not object to the statements made by the district attorney. Neither he nor his attorney challenged their accuracy. Generally, the failure to object to the method of admission of a defendant's record operates as a waiver of a defendant's right to assert the method of proof of a record as a basis for appeal. *State v. Massey,* 59 N.C. App. 704, 298 S.E. 2d 63 (1982). In

*Mack*, however, the Court sought to distinguish *Massey* by finding that N.C.G.S. § 15A-1446(d) waives the requirement for an objection. The statute provides that:

> Errors based upon the following grounds . . . may be subject to appellate review even though no objection . . . has been made in the trial division.
>
>     *     *     *     *
>
> (5) The evidence was insufficient as a matter of law.

This reasoning may be doubtful because N.C.G.S. § 15A-1446 (d)(5) was not intended to be used in a sentencing context, but rather was designed to allow a defendant to question the sufficiency of the evidence to support a verdict against him without objecting or excepting at trial to the trial court's denial of his motion to dismiss. There is no authority to support the Court's extension of the statute to the sentencing context. We do note, however, that our Supreme Court has found that when N.C.G.S. § 15A-1446(d)(5) attempts to allow for the appeal on the sufficiency of the evidence, absent a motion or objection at trial, it is inconsistent with the provisions of Appellate Rule 10(b)(3), and as such that provision must fail. *See State v. Stocks*, 319 N.C. 437, 355 S.E. 2d 492 (1987). There is no authority to revive the statute for sentencing purposes.

Nevertheless, assuming *arguendo* that N.C.G.S. § 15A-1446 (d)(5) is applicable to sentencing issues, defendant has failed to properly preserve his exceptions for review. Pursuant to Appellate Rule 10(b)(2) in order to preserve a right to appeal a party must object to the jury charge, or any omission therefrom, before the jury retires. The rule also explicitly requires a party to object to the failure of the trial court to make necessary findings and conclusions in order to advance these issues on appeal.

The purpose of this rule appears to be to provide the trial court an opportunity to correct any obvious defects and thereby eliminate the need for an appeal and a new proceeding. Implicit in this rule is also an obligation on a party to object to erroneous findings made by the trial court. This requirement is consistent with the spirit of the rule which can be ascertained from the requirements for objection with regard to errors in the jury charge. Therefore, insofar as the provisions of N.C.G.S. § 15A-1446(d)(5)

allows a party to raise arguments regarding the sufficiency of the evidence to support a finding of fact at sentencing, it is inconsistent with the spirit and purpose of Rule 10(b)(2). Statutes which are in conflict with the Rules of Appellate Procedure are ineffective. *See State v. Elam*, 302 N.C. 157, 273 S.E. 2d 661 (1981). Therefore, N.C.G.S. § 15A-1446(d)(5) is ineffective to override the purpose of Rule 10(b)(2) and the case law set forth in *Massey*. Thus, defendant waived his right to appeal any possible error regarding the district attorney's statements at sentencing by failing to object to them.

No error.

Chief Judge HEDRICK and Judge WELLS concur.