GAIL LOVELL, Administratrix of the Estate of Allison Lovell, Deceased, Plaintiff v. NATIONWIDE MUTUAL INSURANCE COMPANY, Defendant

No. 9126SC619

(Filed 5 January 1993)

1. Damages § 135 (NCI4th)— automobile accident—insurance—bad faith refusal to settle claim—evidence sufficient

The evidence of bad faith refusal to settle a med pay (medical payments) insurance claim arising from an automobile accident was sufficient to withstand a motion for a directed verdict where there was no dispute that the med pay claim was valid; although defendant alleged that it did not actually refuse to pay the claim and that plaintiff failed to make a formal demand and defendant simply forgot, common sense leads to the conclusion that plaintiff's submission of the funeral expenses to defendant was a sufficient indication of a desire to be paid under the med pay provisions, bearing in mind that defendant's adjuster had specifically stated that the bills would be paid upon receipt; the jury could reasonably draw the inference from the evidence presented that defendant's failure to pay was intentional, in bad faith, not due to innocent mistake or honest disagreement, and intended to "wear down" plaintiff to influence settlement of the liability claim; and there was sufficient evidence of aggravated conduct. Although plaintiff relies on conduct not specifically connected to the med pay claim to support allegations of aggravated conduct, defendant linked the wrongful death and liability claims and wanted to resolve them at the same time, so that consideration of the whole record of defendant's conduct is permissible.

Am Jur 2d, Insurance §§ 1403, 1404.

Liability insurance: third party's right of action for insurer's bad-faith tactics designed to delay payment of claim. 62 ALR4th 1113.

2. Appeal and Error § 156 (NCI4th)— insurance company's bad faith refusal to settle—instructions—failure to object or to request special instruction in writing

Review of defendant insurance company's assignment of error to the instructions on bad faith refusal to settle was

**LOVELL v. NATIONWIDE MUTUAL INS. CO.**

[108 N.C. App. 416 (1993)]

precluded where defendant orally requested the trial judge to instruct on bad faith refusal to settle, objected at trial and requested re-instruction on a portion of the instruction, and did not make further objections when the judge complied. Failure to timely object to jury instructions constitutes a waiver of any objection and special instruction requests are required to be submitted in writing. N.C.G.S. § 1A-1, Rule 51(b).

**Am Jur 2d, Appeal and Error §§ 533, 537.**

3. **Damages § 135 (NCI4th) — insurer's bad faith refusal to settle claim — punitive damages — not excessive**

The trial court correctly denied defendant's motion for a new trial based on an excessive punitive damages award where plaintiff alleged bad faith refusal to settle a claim, the claim at issue was a $2,000 med pay claim, and the jury awarded $225,000 in punitive damages. The trial judge, who actively participated in the trial and had first-hand knowledge of the proceedings, was clearly in a much better position than the appellate court to determine whether the award was excessive. The fact that plaintiff only requested $15,000 in punitive damages is a factor but is not determinative. Had plaintiff pled correctly, the complaint would have merely requested punitive damages in excess of $10,000 and the evidence presented at trial was sufficient to support the jury's verdict.

**Am Jur 2d, Damages § 739.**

**Insurer's liability for consequential or punitive damages for wrongful delay or refusal to make payments due under contracts. 47 ALR3d 314.**

**Recoverability of punitive damages in action by insured against liability insurer for failure to settle claim against insured. 85 ALR3d 1211.**

Judge WALKER dissenting.

Appeal by defendant from judgment entered 12 February 1991 by Judge John R. Friday in Mecklenburg County Superior Court. Heard in the Court of Appeals 14 April 1992.

DeVore & Acton, by William D. Acton, Jr. and Fred W. DeVore, III, for plaintiff-appellee.

Kennedy Covington Lobdell & Hickman, by Wayne P. Huckel, Charles V. Tompkins, and Michelle C. Landers, for defendant-appellant.

LEWIS, Judge.

Allison Lovell and Rusty Lewis were killed in a car accident the morning after their high school prom. Rusty was driving the car with the permission of the owner, Allison's father Michael Lovell. The vehicle was insured by an automobile liability policy issued by defendant. The policy included a bodily injury liability limit of $250,000.00 per person per accident, medical payments [hereinafter med pay] coverage of $2,000.00 per person per accident, and collision coverage. Both occupants of the car were entitled to the med pay coverage. Because Rusty was driving at the time of the accident with the permission of Mr. Lovell, defendant was obligated to provide him with liability coverage. This obligation placed defendant in a position adversarial to that of plaintiff, who had a significant wrongful death claim against Rusty's estate.

William Gill, defendant's agent who had previously dealt with Mr. Lovell in connection with this insurance policy, and Francis Walker, an adjuster and twenty-year employee of defendant, repeatedly contacted the Lovells before the funeral until they met with Mr. Walker eight days after the accident. At that meeting Mr. Walker assured the Lovells that the med pay claim, which covered funeral expenses, would be paid within two weeks of receipt of the bills regardless of the status of any liability claim. Mr. Walker never stated that in addition to submitting the bills the Lovells would have to make a specific request or demand for payment, nor was such a demand mentioned in the policy. At this point the Lovells had not mentioned the possibility of filing a wrongful death claim. To the Lovells' surprise and revulsion, Mr. Walker began discussing the liability coverage and the low value of their daughter's wrongful death claim at this initial meeting.

One day later Mr. Walker informed plaintiff by telephone that defendant would prefer to settle all claims including the med pay claim and any liability claim, arising out of the same accident at the same time. The Lovells then retained an attorney, Harold

Bender, who notified defendant that he would handle all further inquiries and communications for the Lovells.

The Lovells submitted the funeral bills on July 21, 1988, but these bills had not yet been paid at the time this lawsuit was filed in May 1989. In comparison, the bills submitted for Rusty Lewis on that same day were paid within two or three weeks. Defendants contend that this disparity in treatment is due to the fact that Mrs. Lewis specifically requested payment in a letter sent along with the bills, whereas Mr. Bender merely stated that he wanted to discuss the case with Mr. Walker and did not mention the med pay claim in the letter he sent with the Lovells' bills.

In September 1988 Mr. Bender informed Mr. Walker by letter that the Lovells were demanding the policy limits of $250,000.00 on the wrongful death claim. On November 4, 1988, Mr. Walker offered to settle the wrongful death claim for $30,000.00. The Lovells rejected the offer and continued to demand the policy limits of $250,000.00. Mr. Bender filed the wrongful death action on November 14, 1988. Thereafter Mr. Walker maintains that his only involvement with the case was some follow-up work and discussion of the wrongful death action, and that he never heard anything else from Mr. Bender or the Lovells regarding the med pay claim. During the summer of 1990, the wrongful death action went to trial and ended in a mistrial four days later after the jury could not reach a verdict. That claim was then settled for $200,000.00.

Plaintiff, mother and administratrix of the estate of Allison Lovell, filed this lawsuit on May 1, 1989 to recover on the $2,000.00 med pay claim. Plaintiff also alleged that defendant's refusal to settle and negotiate plaintiff's claim was willful and in bad faith, and therefore sought punitive damages of $15,000.00. At the February 4, 1991 trial, defendant's excuses for nonpayment of the claim were that it "just plumb forgot," and that plaintiff had failed to make a formal written demand for payment. The jury awarded $2,000.00 on the med pay claim and $225,000.00 in punitive damages, and judgment was entered accordingly. Defendant appeals, alleging that the judge erred in denying its motion for a directed verdict, the judge erred in failing to correctly identify and explain the essential elements of a bad faith refusal to settle in its instructions to the jury, and the judge erred in refusing

to grant its motion for a new trial on the basis that the verdict was excessive.

---

I.  Elements of tort of insurance company's bad faith refusal to settle a claim

[1]  First, the defendant challenges the denial of its motion for a directed verdict at the conclusion of the evidence, alleging that plaintiff's evidence did not establish the elements of a bad faith refusal to settle a claim. On a motion for directed verdict the court must consider the evidence in the light most favorable to the nonmovant, allowing the nonmovant the benefit of every reasonable inference. *Atlantic Tobacco Co. v. Honeycutt*, 101 N.C. App. 160, 163, 398 S.E.2d 641, 643 (1990), *disc. rev. denied*, 328 N.C. 569, 403 S.E.2d 506 (1991). If there is more than a scintilla of evidence in the nonmovant's favor, the motion must be denied. *Snead v. Holloman*, 101 N.C. App. 462, 464, 400 S.E.2d 91, 92 (1991). Finally, if the question of whether to grant a directed verdict is close, the case should go to the jury. *Atlantic Tobacco*, 101 N.C. App. at 163, 398 S.E.2d at 642. In this case, the evidence was sufficient to withstand the motion for directed verdict.

In order to recover punitive damages for the tort of an insurance company's bad faith refusal to settle, the plaintiff must prove (1) a refusal to pay after recognition of a valid claim, (2) bad faith, and (3) aggravating or outrageous conduct. *Michael v. Metropolitan Life Ins. Co.*, 631 F. Supp. 451, 455 (W.D.N.C. 1986); *Dailey v. Integon Gen. Ins. Corp.*, 75 N.C. App. 387, 331 S.E.2d 148, *disc. rev. denied*, 314 N.C. 664, 336 S.E.2d 399 (1985).

(1) Refusal to pay valid claim

There is no dispute that the med pay claim was valid; defendant stipulated to this in its response to the complaint. Defendant alleges, however, that it did not actually refuse to pay the claim. Rather, it "just plumb forgot," and plaintiff failed to make a formal demand for payment when she submitted the bills to defendant. Defendant stresses the fact that all of the communications between Mr. Walker and Mr. Bender dealt with the liability claim and that neither mentioned the med pay claim. Thus, nonpayment could only be due to "innocent mistake" or a "lack of attention," not a conscious and intentional decision to refuse payment.

LOVELL v. NATIONWIDE MUTUAL INS. CO.

[108 N.C. App. 416 (1993)]

Plaintiff, on the other hand, alleges that defendant procrastinated on the med pay claim in order to induce a lower settlement of the liability claim. Moreover, Mr. Walker himself told plaintiff that the med pay claim would be paid upon receipt of the bills and never mentioned the need to formally demand payment. The fact that the bills remained unpaid until defendant's response to the complaint indicates a refusal to pay, according to plaintiff. Also, Mr. Lovell testified that he had, in fact, repeatedly inquired through one of defendant's agents as to the status of the med pay claim.

Common sense leads this Court to the conclusion that submission of the bills representing funeral expenses to defendant was obviously a sufficient indication of the Lovells' desire to be paid under the med pay provisions of their insurance policy. Mr. Walker had specifically stated that the bills would be paid upon receipt. The evidence, when viewed in the light most favorable to plaintiff, is more than sufficient to go to the jury on this element.

(2) Bad faith

According to *Dailey v. Integon Gen. Ins. Corp.*, 75 N.C. App. 387, 331 S.E.2d 148, *disc. rev. denied*, 314 N.C. 664, 336 S.E.2d 399 (1985), bad faith means "not based on honest disagreement or innocent mistake." *Id.* at 396, 331 S.E.2d at 155 (citing *Newton v. Standard Fire Ins. Co.*, 291 N.C. 105, 229 S.E.2d 297 (1976)). Defendant interprets *Dailey* to require a "wrongful reason, purpose or motive for not paying" in order to show bad faith.

Defendant alleges that even if the jury determined it had refused to pay, this refusal was not in bad faith. Defendant denies plaintiff's theory that the delay in payment on the med pay claim was intended to "wear down" plaintiff in order to effectuate a low settlement of the wrongful death claim, noting that the only evidence of this theory was nonpayment from July 1988 to May 1989.

Plaintiff maintains that defendant's excuses for nonpayment were not credible. It is hard to believe that defendant "just plumb forgot" to pay the bills when it promptly paid the Lewis' bills which were submitted on the very same day. Plaintiff also points out that Mr. Walker was a "master adjuster" with 21 years experience, and the evidence reveals that he and his supervisor constantly reviewed the Lovells' file. Defendant's other excuse, that the plaintiff failed to make a formal demand for payment, is weak in light of the fact that Mr. Walker stated the bills would be

paid upon receipt and nothing in the policy required a formal demand for payment. Thus, plaintiff surmises that since these excuses were not convincing, defendant's delay in payment must have been deliberate and intentional in order to "wear·down" the Lovells regarding the liability claim. *See Payne v. N.C. Farm Bureau Mut. Ins. Co.*, 67 N.C. App. 692, 694-95, 313 S.E.2d 912, 914 (1984) (pattern of excuses for nonpayment of claim indicative of bad faith).

The evidence, while not overwhelming, was sufficient to withstand the motion for directed verdict. From the evidence presented, the jury could reasonably draw the inference that defendant's failure to pay was intentional, in bad faith, and not due to innocent mistake or honest disagreement. Plaintiff's evidence is even sufficient under defendant's interpretation of *Dailey* requiring wrongful purpose or motive, since it tends to establish that defendant intended to "wear down" the Lovells to influence settlement of the liability claim.

(3) Aggravated conduct

Aggravated conduct may be shown by fraud, malice, gross negligence, insult, rudeness, oppression, or wanton and reckless disregard of plaintiff's rights. *Dailey*, 75 N.C. App. at 394, 331 S.E.2d at 154 (citation omitted).

Defendant claims that there was insufficient evidence of any aggravating conduct. Some of the incidents of questionable conduct occurred before the bills covered by the med pay claim were even submitted, and therefore are irrelevant to failure to pay the med pay claim. Other conduct relied upon by plaintiff concerned only the liability claim, and should not be considered in this case, either, according to defendant.

Plaintiff claims defendant's actions on the whole were insulting, indignant and outrageous. For example, defendant's agent contacted plaintiff and her husband five times before the funeral of their daughter to urge them to meet with the adjuster as soon as possible, and even insinuated that the policy could be voided if they did not immediately comply. At the first meeting, although the Lovells expected to discuss only the car and the med pay coverage, Mr. Walker informed them of a low settlement in another wrongful death case and told them their daughter wasn't worth very much. He stated that he "didn't see a lot of value here," and noted that Allison was "only a high school student" with no job and no dependents. Defendant admits that the adjuster told Mr. Lovell

that his daughter was not asleep at the time of the accident and that she had "burned up."

Plaintiff also claims that aggravated conduct is shown by the fact that defendant admittedly linked the med pay claim and the liability claim, and stated that it wanted to settle all claims at once. Plaintiff's allegations that defendant delayed payment of the med pay claim in order to force a low settlement of the wrongful death claim certainly indicate aggravated conduct. See Smith v. Nationwide Mut. Fire Ins. Co., 96 N.C. App. 215, 219, 385 S.E.2d 152, 154 (1989), disc. rev. denied, 326 N.C. 365, 389 S.E.2d 816 (1990) (delay on payment of claim for 5 months a factor showing aggravated conduct). See also N.C.G.S. § 58-63-15(11)(m) (1991) (states that "[f]ailure to promptly settle claims where liability has become reasonably clear, under one portion of the insurance coverage in order to influence settlement under other portions of the insurance policy coverage" is an unfair claim settlement practice; however, such a violation can only be challenged by the Commissioner of Insurance of North Carolina, and must be performed often enough to constitute a general business practice).

Plaintiff notes defendant's late start on the investigation of the liability coverage, and a series of unanswered letters from Mr. Bender to Mr. Walker sent from July 1988 to October 1988 regarding the progress on the liability claim. Defendant even denied that Rusty Lewis was the driver of the car, although Allison Lovell's body was found seat-belted on the passenger side. The Lovells had to go to the expense of hiring a reconstruction expert on this issue before defendant admitted liability. See Dailey, 75 N.C. App. at 397, 331 S.E.2d at 155 (requiring plaintiff to "go to the inconvenience and expense of obtaining qualified, expert estimates" indicative of aggravated conduct). Plaintiff also notes defendant's low settlement offer of $30,000.00. See Smith, 96 N.C. App. at 218, 385 S.E.2d at 154 (a factor contributing to aggravated conduct was low settlement offer in violation of N.C.G.S. § 58-63-15(11)(h) (cited incorrectly as § 58-54.4(11)(h) in text) ). Finally, plaintiff alleges that in response to Mr. Lovell's inquiry concerning nonpayment of the med pay claim, defendant's agent responded "[y]ou're the one who got a lawyer," evincing an intent to delay prompt settlement of the suit and hostility to the fact that plaintiff had retained a lawyer.

It is true, as defendant contends, that plaintiff relies on conduct not specifically connected to the med pay claim to support the allegations of aggravated conduct. However, since defendant admittedly linked the wrongful death and med pay claims and wanted to resolve them at the same time, this Court finds it permissible for plaintiff to consider the whole record of defendant's conduct in the matter. There was sufficient evidence in this case to go to the jury on the issue of aggravated conduct on the part of the defendant. The denial of defendant's motion for directed verdict was therefore proper since plaintiff presented sufficient evidence on each element of the tort of bad faith refusal to settle a claim.

II. Jury instructions on elements of bad faith refusal to settle

[2] In its second assignment of error defendant contends the trial court failed to correctly identify and explain the essential elements of the tort of an insurance company's bad faith refusal to settle a claim in its instructions to the jury. During the pre-charge conference defendant orally requested the trial judge to instruct on bad faith refusal to settle, and the judge agreed to do so. However, after the charge was read at trial defendant objected and requested re-instruction on a portion of the charge. The court complied and defendant did not make any further objections until this appeal.

According to the N.C. Rules of Appellate Procedure, "[a] party may not assign as error any portion of the jury charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict. . . ." Rule 10(b)(2) (1992). The purpose of Rule 10(b)(2) is to avoid unnecessary new trials due to faulty instructions which the court could have corrected if brought to its attention. *See State v. Bradley*, 91 N.C. App. 559, 564, 373 S.E.2d 130, 133 (1988), *disc. rev. denied*, 324 N.C. 114, 377 S.E.2d 238 (1989). Case law establishes that failure to timely object to jury instructions constitutes a waiver of any objection. *See, e.g., Chastain v. Wall*, 78 N.C. App. 350, 355, 337 S.E.2d 150, 153 (1985), *disc. rev. denied*, 316 N.C. 375, 342 S.E.2d 891 (1986). Also relevant to this assignment of error, the General Rules of the Superior and District Courts require that special instruction requests be submitted in writing at the jury instruction conference, and the North Carolina Rules of Civil Procedure require submission in writing before the judge begins his charge to the jury. General Rules of Practice for the Superior and District Courts, Rule 21 (1992); N.C.G.S. § 1A-1, Rule 51(b) (1990).

LOVELL v. NATIONWIDE MUTUAL INS. CO.

[108 N.C. App. 416 (1993)]

We agree with plaintiff and hold that defendant's failure to timely object at trial and failure to submit its request for special instructions in writing precludes our review of this assignment of error.

III.   Punitive damages

[3]   As its third assignment of error, defendant challenges the trial judge's denial of its motion for a new trial on the basis of an excessive punitive damage award. At the outset we note that defendant has submitted a Memorandum of Additional Authority which it seeks to append to this portion of the appeal. Defendant cites *Mattison v. Dallas Carrier Corp.*, 947 F.2d 95 (4th Cir. 1991), in which the Fourth Circuit struck down South Carolina law on punitive damages as being violative of due process and unconstitutional. Neither party previously raised the issue of the constitutionality of North Carolina's punitive damages scheme, and that issue is not now properly before this Court. *See State v. Cooke*, 306 N.C. 132, 137, 291 S.E.2d 618, 621 (1982) (constitutional issue not raised and passed upon in trial court will not normally be considered on appeal) (quoting *State v. Hunter*, 305 N.C. 106, 112, 286 S.E.2d 535, 539 (1982) ).

Rule 59 of the North Carolina Rules of Civil Procedure provides that a new trial may be granted on the grounds of "[e]xcessive or inadequate damages appearing to have been given under the influence of passion or prejudice. . . ." N.C.G.S. § 1A-1, Rule 59(a)(6) (1990). It is within the sole discretion of the trial judge to determine whether to grant a Rule 59 motion for new trial on the grounds of excessive damages. *See Worthington v. Bynum*, 305 N.C. 478, 482, 290 S.E.2d 599, 602 (1982). The judge's decision may be reversed on appeal only if the appellate court "is reasonably convinced by the cold record that the trial judge's ruling probably amounted to a substantial miscarriage of justice" or a "manifest abuse of discretion. . . ." *Id.* at 487, 482, 290 S.E.2d at 605, 604. Furthermore, the party challenging the trial judge's decision must meet a heavy burden of proof. *Id.* at 484-85, 290 S.E.2d at 604; *Burgess v. Vestal*, 99 N.C. App. 545, 550, 393 S.E.2d 324, 327, *disc. rev. denied*, 327 N.C. 632, 399 S.E.2d 324 (1990).

Defendant contends that the $225,000.00 punitive damages award is "clearly unreasonable" because it "does not bear any logical relation" to the amount of the medical payments claim or conduct of Nationwide. Recently, this Court held that a trial judge had

LOVELL v. NATIONWIDE MUTUAL INS. CO.

[108 N.C. App. 416 (1993)]

not abused his discretion in denying a Rule 59 motion for new trial on the basis that the punitive damages of $175,000.00 were excessive when compared to the compensatory damages of $4,550.00. *Maintenance Equip. Co. v. Godley Builders*, 107 N.C. App. 343, 353-54, 420 S.E.2d 199, 204-05 (1992). The Court noted that punitive damages are awarded "above and beyond actual damages" in order to punish the wrongdoer. *Id.* at 354, 420 S.E.2d at 205. In *Cole v. Duke Power Co.*, 81 N.C. App. 213, 344 S.E.2d 130, *disc. rev. denied*, 318 N.C. 281, 347 S.E.2d 462 (1986), a jury awarded $1.5 million compensatory damages and $1.5 million punitive damages for the wrongful death of a child who had been playing near an unlocked electrical cabinet and was electrocuted when he climbed inside. The Court upheld the verdict, finding no "substantial miscarriage of justice." 81 N.C. App. at 226, 344 S.E.2d at 137. *See also Hairston v. Alexander Tank & Equip. Co.*, 60 N.C. App. 320, 330, 299 S.E.2d 790, 796 (1983), *rev'd on other grounds*, 310 N.C. 227, 311 S.E.2d 559 (1984) (this Court upheld $200,000.00 verdict in negligence action, stating that it would not "second-guess a jury"); *Kremer v. Food Lion, Inc.*, 102 N.C. App. 291, 296, 401 S.E.2d 837, 839-40 (1991) (this Court upheld trial judge's denial of Rule 59 motion for new trial on grounds of excessive verdict where jury had awarded plaintiff who fell in defendant's supermarket $90,000.00). We have not found any cases finding an abuse of discretion for failure to order a new trial on the basis of excessive damages in North Carolina.

The trial judge, who actively participated in the trial and had first-hand knowledge of the proceedings, was clearly in a much better position than this Court to determine whether the jury award was excessive. *Worthington*, 305 N.C. at 487, 290 S.E.2d at 605. Our Supreme Court stated in *Worthington* that the appellate courts "should place great faith and confidence in the ability of our trial judges to make the right decision, fairly and without partiality, regarding the necessity for a new trial." *Id.* Moreover, trial judges should use their discretion "sparingly," and "in proper deference to the finality and sanctity of a jury's findings." *Hairston*, 60 N.C. App. at 330, 299 S.E.2d at 796. We find no abuse of discretion here.

The fact that plaintiff only requested $15,000.00 in punitive damages in the complaint is a factor, but is not determinative as to whether the verdict was excessive. Had the plaintiff plead correctly, the complaint would have merely requested punitive

damages in excess of $10,000.00. N.C.G.S. § 1A-1, Rule 8(a)(2) (1990). This Court has noted the "longstanding rule that damages in this state are governed by the evidence presented, rather than the claim made for relief. . . ." *Biggs v. Cumberland County Hosp. Sys., Inc.,* 69 N.C. App. 547, 550, 317 S.E.2d 421, 424 (1984). The evidence presented at trial was sufficient to support the jury's verdict. The fact that the complaint contains a much lower figure does not persuade this Court that the trial judge abused his discretion.

The evidence presented was sufficient to support both the finding of the tort of bad faith refusal to settle a claim and the punitive damages award. We find no error. The decision of the superior court is

Affirmed

Judge WYNN concurs.

Judge WALKER dissents.

Judge WALKER dissenting.

I respectfully dissent from that portion of the majority opinion which upholds the jury's award of $225,000 as punitive damages. Although I agree that the facts in this case are sufficient to support a finding of actionable, aggravating conduct, so that the trial court properly submitted the issue of punitive damages to the jury, "the amount assessed [as punitive damages] is not to be excessively disproportionate to the circumstances." *Carawan v. Tate,* 53 N.C.App. 161, 165, 280 S.E.2d 528, 531 (1981), *modified and aff'd,* 304 N.C. 696, 286 S.E.2d 99 (1982). *See Swinton v. Savoy Realty Co.,* 236 N.C. 723, 725, 73 S.E.2d 785, 787 (1953) (The jury's award must be "within reasonable limits"). The jury's discretion in awarding punitive damages must be exercised "within reasonable constraints" in order to satisfy due process. *Pacific Mutual Life Insurance Company v. Haslip,* 499 U.S. ---, 113 L.Ed.2d 1 (1991). Having reviewed the evidence in the instant case, I believe that the jury award was excessive under the circumstances and that a new trial was warranted and should have been granted pursuant to Rule 59.

It is unquestionable that this case strikes at the heart of one's emotions. Allison Lovell was tragically killed on the way home

from her high school prom. There was evidence that defendant pressured the Lovells for a meeting with the adjuster prior to Allison's funeral, and that although the Lovells expected to address the damage to the car and the medical payments provision at this meeting, the adjuster instead immediately began discussing the liability coverage of the policy.

Aside from the discussion of liability, there was evidence that defendant's adjuster assured the Lovells that the medical payments provision was a matter of contract independent from the liability coverage, and that once submitted, those bills would be paid within ten to fourteen days. However, when the timely submitted bills remained unpaid, the complaint was filed. Defendant's answer admitted that plaintiff had submitted the requisite documentation and stated that "defendant is ready, willing, and able to pay . . . medical benefits of $2,000.00 which are available to her." Additionally, the funeral bills for Rusty Lewis had been submitted to defendant on the same date, 21 July 1988, and were paid by defendant under the Lovells' medical payments provision within two or three weeks.

Although I find such conduct to be objectionable, I cannot conclude that the amount assessed was not excessively disproportionate to the circumstances. I do not believe the evidence supports a finding of conduct so patently offensive or outrageous as to warrant punitive damages in the amount of $225,000 and can only conclude that this award was given "under the influence of passion" because of the emotional nature of the case. Additionally, I note that the complaint asserted a claim for punitive damages in the amount of $15,000. (Although this pleading violates G.S. 1A-1, Rule 8(a)(2), defendant did not challenge it and the issue is not before this Court on appeal.) The fact that the jury's award exceeded the amount sought in the complaint is not reversible error as a matter of law. Shuford, N.C. Civ. Prac. & Proc. (3rd Ed.), Sec. 54-7. However, G.S. 1A-1, Rule 8 provides in part:

(a) A pleading which sets forth a claim for relief . . . shall contain

(2) A demand for judgment for the relief to which he deems himself entitled.

I infer from the pleading, therefore, that plaintiff considered $15,000 to be an appropriate sanction for defendant's conduct, and it is

SOUTHEASTERN STEEL ERECTORS v. INCO, INC.

[108 N.C. App. 429 (1993)]

further evidence that the jury's $225,000 award was excessive under the circumstances.

The majority opinion cites *Maintenance Equipment Co. v. Godley Builders*, 107 N.C.App. 343, 420 S.E.2d 199 (1992), in which this Court upheld an award of $4,550 in compensatory damages and $175,000 in punitive damages. In that case, there was sufficient evidence from which the jury could find that defendants knew plaintiff was in possession of the subject property; that plaintiff requested defendant to discontinue the grading operations; that after the land was graded, defendants refused plaintiff's request to "put it back like it was" and pay for damages; and that defendant Godley stated under the same circumstances he would again follow the same course of action. Such egregious conduct supported an assessment of $175,000 in punitive damages, as it was not "excessively disproportionate to the circumstances of contumely and indignity present in the case." *Id.* at 354, 420 S.E.2d at 205, *quoting Carawan v. Tate, supra.*

On remand, it is my view that the conduct to be examined as the basis for plaintiff's claim for punitive damages should be limited to defendant's failure to promptly pay the medical payments claim pursuant to the terms of the contract, as opposed to defendant's conduct arising out of attempts to settle the liability claim. In this regard, the amount of punitive damages awarded, if any, should bear a rational relationship to the defendant's conduct concerning its failure to timely pay the medical payments coverage of $2,000.