UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

DANBY OF NORTH AMERICA,
INCORPORATED,

*Plaintiff-Appellant,*

v.

TRAVELERS INSURANCE COMPANY;
TRAVELERS INDEMNITY COMPANY OF
CONNECTICUT; CHARTER OAK FIRE
INSURANCE COMPANY,

*Defendants-Appellees.*

No. 01-1523

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Terrence W. Boyle, Chief District Judge.
(CA-99-336-5-BO)

Argued: October 30, 2001

Decided: January 18, 2002

Before WIDENER, TRAXLER, and KING, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

## COUNSEL

**ARGUED:** John Lester Sarratt, KENNEDY, COVINGTON, LOB-
DELL & HICKMAN, L.L.P., Raleigh, North Carolina, for Appellant.
Kenneth E. Ryan, DRINKER, BIDDLE & REATH, L.L.P., Washing-
ton, D.C., for Appellees. **ON BRIEF:** William T. Corbett, Jr.,

DRINKER, BIDDLE & SHANLEY, L.L.P., Florham Park, New Jersey; Stephen B. Brown, KIRSCHBAUM, NANNEY, BROWN & KEENAN, P.A., Raleigh, North Carolina, for Appellees.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

**OPINION**

PER CURIAM:

This appeal arises from a dispute between Danby of North America, Incorporated ("Danby") and three insurance companies, Travelers Insurance Company, Travelers Indemnity Company of Connecticut, and Charter Oak Fire Insurance Company (collectively "Travelers") over the scope of an insurance policy (the "Policy") Danby purchased from Travelers.[1] After successfully concluding an arbitration proceeding in 1998 against the Rondeau Bay Construction Corporation ("Rondeau Bay"), Danby filed a claim with Travelers for the costs and expenses of its defense, asserting that Travelers had been obligated to defend Danby in the arbitration proceedings. When Travelers denied Danby's claim, Danby responded by initiating this lawsuit. On March 8, 2001, the district court awarded summary judgment to Travelers. For the reasons explained below, we affirm.

I.

In the late 1980s, Danby Propriety Ltd., an Australian corporation, developed a system for re-lining and restoring underground pipes (the "Danby System"). Danby Propriety granted Danby exclusive authority to use and to grant licenses for the Danby System in the United States, Canada, and Mexico. In 1989, Danby entered into a licensing agreement (the "Agreement") with Cinco Construction, Inc.

---

[1]The Policy, according to the Answer filed by Travelers, was actually issued by Charter Oak Fire Insurance Company.

("Cinco"), Rondeau Bay's corporate predecessor, under which Cinco was given a non-exclusive license to market the Danby System in the United States, Canada, and Mexico, and also given an exclusive license to market the system in California. The Agreement contained a termination clause under which Danby could terminate the licenses if Cinco failed to meet certain performance goals. The Agreement also contained an arbitration clause which required that "[a]ny controversy or dispute arising out of or relating to this Agreement shall be resolved in accordance with the rules and procedures of the American Arbitration Association." On September 13, 1996, Danby terminated the licenses, then held by Rondeau Bay as successor to Cinco, for failure of Rondeau Bay to meet its minimum performance obligations. In response, Rondeau Bay, on June 3, 1997, filed with the American Arbitration Association (the "AAA") a Demand for Arbitration of its dispute with Danby.

In early December 1997, Rondeau Bay filed its arbitration complaint with the AAA, alleging that the termination of its licenses was unjust because Danby had breached the Agreement in eleven respects. Two of these allegations were that Danby had breached the Agreement by: (1) actively discouraging potential users from using the Danby System; and (2) actively and inaccurately disparaging Rondeau Bay to existing and prospective users of sewer pipe liners. Rondeau Bay further claimed that Danby's breaches of contract were tortious in nature, entitling it to punitive damages.

On December 23, 1997, Danby replied to Rondeau Bay's arbitration complaint and denied liability. It then counter claimed against Rondeau Bay for breach of contract, breach of the covenant of good faith and fair dealing, and negligence. On April 27, 1998, Rondeau Bay filed its arbitration brief with the AAA, and contended therein that Danby had breached the Agreement by failing to provide a pipe-lining system that would work in small diameter pipes (i.e., pipes of less than twenty-four inches in diameter). Rondeau Bay maintained that, in addition to its failure to deliver such a product, Danby had also breached the Agreement by representing to others that the Danby System was inappropriate for small diameter pipes. Rondeau Bay maintained that these earlier breaches of the Agreement by Danby barred it from exercising the Agreement's termination clause, and that

Danby's attempted termination of the Agreement was therefore unjust.

In late April and early May of 1998, arbitration proceedings were conducted in San Francisco, California, before a single arbitrator. Thereafter, on June 25, 1998, the arbitrator rendered an award in favor of Danby, concluding that Rondeau Bay's claims were without merit. Danby, as the prevailing party in arbitration, therefore owed no damages to Rondeau Bay, and its costs of arbitration consisted of the legal costs and expenses it had incurred in defending the proceedings (the "defense costs").

Two weeks later, on July 7, 1998, Danby first informed Travelers that it intended to seek reimbursement under the Policy for the defense costs. The Policy, a commercial general liability policy, had been issued by Travelers on October 9, 1996, and was in effect from November 3, 1996 to November 3, 1997. Pursuant to Section I.B.1. of the Policy, Danby was insured, inter alia, against damages for which it became liable because of "advertising injury" caused in the course of advertising its goods, products, or services. Danby asserted to Travelers that the harm alleged in Rondeau Bay's arbitration complaint constituted an "advertising injury" within the meaning of the Policy, and that Travelers had a duty to defend Danby in Rondeau Bay's arbitration proceeding. Danby therefore contended that Travelers was obligated to reimburse it for its defense costs. In early November 1998, Travelers denied Danby's claim on the Policy and, on November 17, 1998, Danby acknowledged the claim's denial and requested that it be reconsidered. On January 4, 1999, Travelers reaffirmed its denial of Danby's claim.

Danby initiated this litigation against Travelers in North Carolina state court on April 21, 1999, alleging, in three counts, breach of the terms of the Policy, breach of the implied covenant of good faith and fair dealing, and violation of the North Carolina Deceptive Trade Practices Act. Travelers promptly removed the proceeding to the Eastern District of North Carolina and, on April 4, 2000, the parties filed cross-motions for summary judgment. On March 8, 2001, the district court awarded summary judgment to Travelers, concluding that Rondeau Bay's claim against Danby was not covered by the Policy, and also concluding that Rondeau Bay's claim was barred by the

Policy's exclusion, found in Section I.B.2.b.(1), for breach of contract claims.[2] Danby appeals the district court's summary judgment award, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.[3]

## II.

There are two preliminary matters to be considered before we examine the merits of Danby's appeal. First, our standard of review of an award of summary judgment by a district court is de novo. *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). In analyzing this appeal, we stand in the same position as the district court, and we will uphold an award of summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Second, because we are sitting in diversity, we apply North Carolina choice-of-law principles. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). In North Carolina, the rule of *lex loci contractus*, i.e., the law of the place where the contract was made, controls its interpretation. *Fast v. Gulley*, 155 S.E.2d 507, 509-10 (N.C. 1967). Because the Policy was formed in North Carolina, the legal principles of that state are to be applied.

---

[2]Although the district court did not address the issue, Travelers also asserted, and it raises on appeal, the contention that any obligation it might have had to defend Danby was barred due to Danby's failure to timely notify Travelers of its claim. Travelers contends that, under North Carolina law, *see Great Am. Ins. Co. v. C.G. Tate Constr. Co.*, 279 S.E.2d 769 (N.C. 1981) ("Great American I"), and *Great Am. Ins. Co. v. C.G. Tate Constr. Co.*, 340 S.E.2d 743 (N.C. 1986) ("Great American II"), Danby's failure to file its claim with Travelers until after the completion of the arbitration proceedings frustrated Travelers's ability to defend; consequently, any duty to defend was discharged. *Great American I*, 279 S.E.2d at 775 ("[If] the purpose of protecting the insurer's ability to defend has been frustrated, the insurer has no duty under the contract."). This claim is hardly frivolous, but because we conclude that Travelers possessed no duty under the Policy to defend Danby in the first place, we need not address its merits.

[3]Danby has not appealed the summary judgment ruling on its claim under the North Carolina Deceptive Trade Practices Act.

### III.

### A.

Danby maintains on appeal that the district court erred in concluding that the Rondeau Bay claims, as litigated in arbitration, were not within the scope of the Policy. In support of this contention, Danby asserts that Travelers was obligated to defend it whenever the pleadings disclosed the possibility that covered claims were raised against Danby. In North Carolina, the duty to defend is "broader than [the] obligation to pay damages incurred by events covered by a particular policy," *Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co.*, 340 S.E.2d 374, 377 (N.C. 1986), and the duty to defend "arises when the claim against the insured sets forth facts representing a risk covered by the policy." *Wm. C. Vick Constr. Co. v. Pa. Nat'l Mut. Cas. Ins. Co.*, 52 F. Supp. 2d 569, 578 (E.D.N.C. 1999) (Britt, J.). In order to determine whether a duty to defend arises under a particular insurance policy, North Carolina employs what is known as the "comparison test": "the pleadings are read side-by-side with the policy to determine whether the events as alleged are covered or excluded" and "[a]ny doubt as to coverage [is] resolved in favor of the insured." *Waste Mgmt.*, 340 S.E.2d at 378.[4] If, however, the facts alleged "are not even arguably covered by the policy, then the insurer has no duty to defend." *Id.* Thus, if the facts alleged by Rondeau Bay in its arbitration complaint could possibly implicate coverage under the Policy, Travelers possessed a duty to defend Danby.

The rules of construction for insurance policies in North Carolina are well established. In construing an insurance contract, "[i]f the policy language is clear and unambiguous, the policy must be interpreted according to its plain meaning." *Vick Constr.*, 52 F. Supp. 2d at 581. *See also Nationwide Mut. Fire Ins. Co. v. Grady*, 502 S.E.2d 648, 651 (N.C. App. 1998). Moreover, as with other contracts, "the objective of construction of terms in the insurance policy is to arrive at the

---

[4]The North Carolina courts have not specifically decided the issue of whether claims made in arbitration are analogous to those made in a judicial context. As the district court noted in its *Vick Construction* decision, however, "logic dictates" that the comparison test is equally applicable to arbitration proceedings. *Vick Constr.*, 52 F. Supp. 2d at 578-79.

insurance coverage intended by the parties when the policy was issued." *Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co.*, 172 S.E.2d 518, 522 (N.C. 1970). Therefore, as the Supreme Court of North Carolina observed in *Wachovia*,

> [If an insurance contract] contains a definition of a term used in it, this is the meaning which must be given to that term wherever it appears in the policy, unless the context requires otherwise. . . . In the absence of such a definition, nontechnical words are to be given a meaning consistent with the sense in which they are used in ordinary speech, unless the context clearly requires otherwise.

*Id.* Furthermore, if "the immediate context in which the words are used is not clearly indicative of the meaning intended, resort may be had to other portions of the policy and all clauses of it are to be construed, if possible, so as to bring them into harmony." *Id.* To the extent that, after applying these rules of construction, an ambiguity nonetheless exists, it must be resolved in favor of the insured. *Vick Constr.*, 52 F. Supp. 2d at 581; *Wachovia*, 172 S.E.2d at 522. The mere assertion of ambiguity by an insured, however, is insufficient to establish that a term is ambiguous; "[n]o ambiguity . . . exists unless, in the opinion of the court, the language of the policy is fairly and reasonably susceptible to either of the constructions for which the parties contend." *Wachovia*, 172 S.E.2d at 522.

These rules of construction clearly indicate the types of claims which could give rise to Travelers's duty to defend Danby under the Policy. Pursuant to the Policy's Section I.B.1.a. and b.(2), advertising injuries caused by Danby are covered if "caused by an offense committed in the course of advertising [Danby's] goods, products or services."[5] In the commercial context, advertising is generally defined as

---

[5]The relevant portions of Section I.B.1. of the Policy provide as follows:

    a.   We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages.

"[a]ny oral, written, or graphic statement made by the seller in any manner in connection with the solicitation of business[.]" Black's Law Dictionary 54 (6th ed. 1990).[6] Thus, if we accord these provisions of the Policy their plain meaning, only those advertising injuries caused by Danby in the course of attempting to sell its goods, products, or services are covered. With respect to the meaning we accord to the term "advertising injury," Section V.1. of the Policy defines an "advertising injury" as an injury "arising out of" one of four "offenses" listed therein, each of which has a well-established legal meaning.[7] Under North Carolina's *Wachovia* decision, we must defer to the

---

   . . .

  b.   This insurance applies to:

   . . .

      (2)    "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services[.]

[6]Advertising does have an alternative meaning in the non-commercial context, "[t]o advise, announce, apprise, command, give notice of, inform, make known, [or] publish," e.g., to advertise one's position on an issue. Black's Law Dictionary, *supra*, at 54. Danby urges us to adopt this definition of advertising, asserting that, as there are two potential meanings for advertising, any ambiguity in the Policy must be resolved in its favor. *Wachovia*, 172 S.E.2d at 522. We employ the rule of resolving ambiguity in favor of insured, however, only if "the language of the policy is fairly and reasonably susceptible to either of the constructions for which the parties contend." *Id.* In this case, the Policy is a commercial general liability policy, and provides coverage for commercial risks; therefore, the language of the Policy is only "reasonably susceptible" to the commercial definition of advertising. Moreover, as the other provisions of the Policy provide coverage for commercial risks, employing the non-commercial definition urged by Danby would be inconsistent with the general structure of the Policy. Thus, although we recognize that there is an alternative definition for advertising, only the commercial definition is relevant to our analysis of the Policy's coverage.

[7]There are four offenses enumerated in Section V.1. of the Policy as specifically constituting "advertising injury." Only one of those four offenses, set forth in Section V.1.a., is pertinent here, and it provides that an injury arising out of the "[o]ral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services" constitutes "advertising injury."

Policy's definition of "advertising injury," and we can thus consider only those injuries arising out of the enumerated offenses as constituting "advertising injury" within the meaning of the Policy. Moreover, such an interpretation of "advertising injury" is consistent with North Carolina's jurisprudence with respect to similar insurance policy provisions. In *Russ v. Great Am. Ins. Cos.*, the North Carolina Court of Appeals held that "personal injury policy provisions" that provided coverage for certain enumerated torts should be read as providing coverage for those torts exclusively. 464 S.E.2d 723, 727 (N.C. App. 1995). Therefore, we must conclude that the Policy covers only those advertising injuries arising out of the four enumerated "offenses" listed in its Section V.1.

Under North Carolina law, Danby bears the burden of showing that the claims made against it, and for which coverage is sought, fall within the Policy's coverage. *Hobson Constr. Co., Inc. v. Great Am. Ins. Co.*, 322 S.E.2d 632, 635 (N.C. App. 1984). In attempting to carry this burden, Danby maintains that the allegations in Rondeau Bay's arbitration complaint, i.e., that Danby had disparaged it to potential customers, could be construed as a claim for product disparagement. Danby points out that, under Section V.1.a. of the Policy, an "advertising injury" includes "[o]ral or written publication of material that . . . disparages a person's or organization's goods, products or services," and that Rondeau Bay asserted in its arbitration complaint that Danby committed oral disparagement in a tortious manner. Danby therefore contends that, applying the comparison test, Rondeau Bay's allegations that Danby orally disparaged it to potential customers sufficiently raises a potentially covered claim to invoke Travelers's duty to defend.

Danby's contention, however, misconstrues the nature of the duty to defend in North Carolina. Put simply, the test we must apply is whether the alleged injury, assuming Rondeau Bay had proven its claim, would be covered by the Policy. *See Waste Mgmt.*, 340 S.E.2d at 377. ("When the pleadings state facts demonstrating that the alleged injury is covered by the policy, then the insurer has a duty to defend, whether or not the insured is ultimately liable."). In this case, the injury alleged by Rondeau Bay in its arbitration complaint was derived from an alleged breach of contract. Although Rondeau Bay asserted that Danby had advised potential customers that the Danby

System was inappropriate for small diameter pipe, it did so as a justification for its failure to perform under the Agreement. Rondeau Bay did not, however, assert any injuries incurred by it as a result of Danby's statements to potential customers regarding the use of the Danby System on small diameter pipe; Rondeau Bay sought remedy for injuries it had suffered as a result of Danby's termination of the Agreement. Under the comparison test, there is no doubt that such injuries are not covered by the Policy; thus, if Rondeau Bay had prevailed in arbitration, any damages owed by Danby would not have been covered. As such, Rondeau Bay's claim does not give rise to any duty on the part of Travelers to defend Danby under the Policy.

Moreover, even if the injury alleged by Rondeau Bay in its arbitration complaint fell within the Policy's definition of "advertising injury," i.e., if Rondeau Bay sought a remedy for an injury caused by one of the four enumerated "offenses" in Section V.1. of the Policy, Rondeau Bay's claim in arbitration would not give rise to any duty on the part of Travelers to defend Danby. In order for such a duty to arise under the Policy, three conditions must exist: (1) Danby must have committed one of the four enumerated offenses found in Section V.1. of the Policy; (2) the offense must have been the source of the injury for which Rondeau Bay is claiming redress; and (3) the offense must have been "committed in the course of [Danby's] advertising". Even if Danby committed one of the four offenses enumerated in Section V.1., and even if that offense was the source of Rondeau Bay's injury, it would be covered by the Policy only if it was committed in the course of Danby's advertising.

As we noted previously, advertising, in the commercial context, means statements made in the solicitation of business; thus, the only covered injuries would be those caused by Danby through the commission of an enumerated offense in the course of attempting to sell its goods, products, or services. Therefore, in order for Travelers's duty to defend to attach, Rondeau Bay had to allege facts indicating that it had been harmed by oral or written disparaging statements made by Danby in the course of its efforts to sell its goods, products, or services. Rondeau Bay's arbitration complaint, however, failed to make any such allegations. Indeed, the complaint did not assert that any of the injuries to Rondeau Bay related to Danby's advertising. Therefore, even if Rondeau Bay had alleged a covered injury, the req-

uisite nexus between the alleged offense and Danby's advertising is not present.

## B.

Furthermore, if Danby had sustained its burden of showing Rondeau Bay's arbitration claim to be within the terms of the Policy, the breach of contract exclusion in its Section I.B.2.b.(1) nevertheless would be applicable.[8] In determining the applicability of an exclusion in a particular case, the insurer bears the burden of proof. *Hobson*, 322 S.E.2d at 635. In attempting to sustain that burden, Travelers maintains that the Policy exempts advertising injuries arising out of breach of contract, and that Rondeau Bay only alleged injuries arising out of Danby's "unjust" termination of the Agreement.

In North Carolina, policy exclusions "are to be construed strictly so as to provide the coverage, which would otherwise be afforded by the policy." *Wachovia*, 172 S.E.2d at 523. Even construing the breach of contract exclusion narrowly, it is applicable in this situation. Advertising injuries that "arise out of" breach of contract are not covered by the Policy. For an injury to arise out of an event, it must "spring up, originate" from that event. Black's Law Dictionary, *supra*, at 108. The injuries alleged by Rondeau Bay in its arbitration complaint derive from what Rondeau Bay regards as an unjust termination of the Agreement, i.e., from Danby's breach of the Agreement. Thus, even if these injuries constituted an "advertising injury," they must have arisen out of a breach of contract. Because this exclusion is applicable, Rondeau Bay did not make any claim in arbitration that potentially implicates the coverage afforded to Danby under the Pol-

---

[8]The Exclusion in Section I.B.2.b.(1) of the Policy provides, in relevant part, as follows:

   2.   *Exclusions*

   This insurance does not apply to:

   . . .

   b.   "Advertising injury" arising out of:

       (1)   Breach of contract, other than misappropriation of advertising ideas under an implied contract[.]

icy, and Rondeau Bay's arbitration complaint did not give rise to Travelers's duty to defend.[9]

### IV.

For the foregoing reasons, we affirm the judgment of the district court in favor of Travelers.

*AFFIRMED*

---

[9]Danby also appeals the district court's ruling that Travelers did not breach its implied covenant of good faith and fair dealing by denying Danby's request for reimbursement. In North Carolina, a denial of coverage in bad faith means that the denial was "not based on honest disagreement or innocent mistake." *Lovell v. Nationwide Mut. Ins. Co.*, 424 S.E.2d 181, 185 (N.C. App. 1993). Danby has made no showing that Travelers's adoption of its legal position on the scope of coverage, and its denial of Danby's claim, were not the product of an honest disagreement over the Policy's reach; instead, Danby bases its contention on the ground that the Policy so clearly requires coverage that any denial must have been in bad faith. Even if we were inclined to adopt Danby's position on the scope of coverage, Travelers's position could plainly be the product of an honest disagreement over the scope of the Policy. Therefore, Travelers did not violate its implied covenant of good faith and fair dealing in its denial of Danby's claim.